# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | SUITE 7110
NEW YORK, NEW YORK 10118
TEL (212) 763-0883 | FAX (212) 564-0883
WWW.KAPLANHECKER.COM

DIRECT DIAL 212.763.0889
DIRECT EMAIL shecker@kaplanhecker.com

May 14, 2020

**BY ECF**

The Honorable Margo K. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:    *Federal Defenders of New York, Inc. v. Federal Bureau of Prisons, et al.,* No. 19 Civ. 660 (E.D.N.Y.)

Dear Judge Brodie:

We write on behalf of the Federal Defenders in advance of tomorrow's conference.

As noted previously, we have seen some meaningful improvements this month in relation to calls that the BOP has scheduled. We are receiving fewer reports that inmates are not allowed to take legal calls in private and fewer reports that facility staff are arbitrarily cutting calls short. We appreciate the Court's and Ms. Lynch's efforts in addressing these issues, and hope to see continued improvements moving forward.

But significant problems remain. Since the beginning of the coronavirus crisis, the principal Sixth Amendment issue at the MDC and MCC has been that the demand for legal calls and videoconferences greatly exceeds supply, resulting in significant delays when attorneys seek to speak with their clients. In early April, the Federal Defenders requested that the Court issue an order requiring the BOP to schedule legal calls within 48 hours of a request or otherwise explain to the Court its inability to do so. *See* Doc. No. 45. In declining to issue the requested order, Your Honor stated:

> I'm going to allow BOP to gather the information, figure out how to accommodate more calls per day because it is necessary, and then you should be accommodating these calls within 48 hours. That should not be a hardship either. Regardless of whether you're getting 40 or 50 requests a day, you should be able to. And if you can't accommodate these calls in 48 hours, then yes, you should be able to say, I can't accommodate the call because we've already

KAPLAN HECKER & FINK LLP

2

> scheduled 40 for today and 40 for tomorrow, but I'll schedule you for the next day. Those are not unrealistic requests.

Tr. of Apr. 3, 2020 Conf. at 46.

In response, the BOP told the Court on April 6 that "the maximum number of daily calls it can facilitate at the MDC in the immediate term, *i.e.*, from tomorrow through April 17, will be 54 (comprised of 18 court proceedings and 36 legal calls or calls with Probation or Pretrial Services)." No. 48 at 2.[1] The BOP further told the Court that "the maximum number of daily calls it can facilitate at the MCC in the near term, *i.e.*, from Monday through April 17, will be 70 (comprised of 30 court proceedings and 40 legal calls or calls with Probation or Pretrial Services)." *Id.* The BOP stated that it "expect[ed] its capacity to increase after" April. 17. *Id.*

When the Federal Defenders expressed concern that those commitments were insufficient to meet the demand for legal consultation, Doc. No. 49, the government reiterated that call capacity was "expected to rise significantly as extra staff comes on board." Doc. No. 50; *see also* Tr. of Apr. 10, 2020 Conf. (Seth Eichenholtz: "We are confident we will continue to increase the call capacity or get to the point that either we are providing those calls, as many as of them as possible within the 48-hour period."). With respect to the MDC specifically, the government said the additional staff would increase call capacity "to 54 *legal* calls per day." Doc. No. 52 at 2 (emphasis added).

Although the additional staff arrived more than a month ago, the number of calls scheduled has remained effectively unchanged, and there has been nothing near the "significant" increase that the government promised. The Federal Defenders have raised the issue of call volume for weeks, primarily in relation to the more populated MDC, and have attempted to explore practical solutions. *See, e.g.*, Tr. of May 8, 2020 Conf. at 28 (Deirdre von Dornum, raising the possibility that calls could be scheduled after the afternoon count, when legal visiting previously took place).

After we raised concerns about the MDC's capacity at last week's conference, Your Honor told the government:

> Well, whether you can agree to it or not, [evening calls are] something that you have to look into, because if the calls cannot be accommodated during the afternoon slot in addition to the morning slot, then you are going to have to do so in the evening. And then based on the fact that the number of calls have been increasing and courts are now scheduling more matters, which means that they will be increasing even more, you really need to start thinking about how to accommodate additional calls in the evening . . . .

*Id.* at 43. The government insisted that "this has always been something that we have thought about, in terms of how we can increase capacity," and assured the Court that "if there's still a

---

[1] The government based this total on a six-calls-per-floor calculation. ECF No. 48 at 2. When the women's unit is included, however, the total number of calls to be shared by defense counsel, Probation, and Pretrial actually comes to 42.

**KAPLAN HECKER & FINK LLP**

3

problem, certainly we are going to discuss it." *Id.* at 44. Your Honor reiterated that the parties should work to avoid a situation in which they tells the Court in two weeks "that the volume is so great that neither the morning or afternoon slots could accommodate all of the calls and the calls just couldn't be made," and instructed the government to "start looking into evening calls as an alternative, understanding that [it] may very well need to do that." *Id.* 45.

As of this past Monday, the BOP permitted the Federal Defenders to submit three additional requests for 15-minute calls for the sixth floor of the MDC, which the MDC said it would attempt to place in the morning, assuming court calls were not at full capacity. The demand for legal calls on the sixth floor still exceeds the number of slots available, however, and this partial fix will likely be mooted in the coming weeks as court proceedings take place with increased frequency.

The Federal Defenders also informed the government that the demand for legal calls exceeds capacity on three other floors at the MDC, and there are attorneys who have been waiting *two weeks* to speak to their pretrial clients. This evening the Federal Defenders were told that they could follow the same practice of submitting requests for shorter morning calls for other floors at the MDC, but, as with the sixth floor, these calls would still depend on the lack of a court proceeding scheduled for the same time. In other words, it does not appear that overall capacity has changed since the government's April 6 letter, but rather the BOP is now willing, more than six weeks later, to permit some additional legal calls when call slots allocated to court proceedings go unused.

Especially as the challenges of guaranteeing sufficient (and scheduled) legal access are likely to increase at both facilities in the weeks to come, we respectfully request that the Court direct the government to formulate a comprehensive plan for legal access to be submitted to the Court within the next 10 days. That plan should address:

- What is the BOP's current capacity for legal calls and videoconferences at the MDC and MCC?

- What are the BOP's plans for increasing capacity to meet demand during the remainder of the coronavirus crisis? For example, will current levels of staffing be maintained? Or will additional staff be brought to the facilities?

- Does the BOP anticipate any new impediments to meeting the demand for legal calls and videoconferences in the future (*e.g.*, loss of staff)?

- What are the BOP's plans for assuring that legal calls and videoconference occur at scheduled times, especially as we begin to see an increase in the number of court conferences that require counsel's availability at specific times?

- What are the BOP's plans for resuming in-person visiting, even if the date such visiting may restart is uncertain? What steps is the BOP taking now to prepare for that moment? Recognizing that any plan for the resumption of in-person visiting will almost certainly

KAPLAN HECKER & FINK LLP

4

require ramped-up testing, is the BOP seeking to procure such tests at a level that would permit testing of detainees, guards, and visitors?

- Given that risks associated with COVID-19 will exist until there is a vaccine, how will the BOP ensure that alternative methods of attorney access remain available after in-person legal visiting resumes?

To date, we have struggled to obtain the basic information that would make constructive engagement on these topics possible. Following the government's submission, however, we believe that our client, as well as the Court and the mediator, will be in a better position to determine the most effective way to address the Sixth Amendment challenges that individuals in BOP custody continue to face.

Respectfully submitted,

/s/ Sean Hecker
Sean Hecker

cc:   Counsel of Record (by ECF)
      Hon. Loretta Lynch, Paul, Weiss, Rifkind, Wharton & Garrison LLP (by e-mail)
      Roberto Finzi, Paul, Weiss, Rifkind, Wharton & Garrison LLP (by e-mail)
      Tony Joe, Paul, Weiss, Rifkind, Wharton & Garrison LLP (by e-mail)
      Jeffrey Oestericher, U.S. Attorney's Office (S.D.N.Y.) (by e-mail)
      David Jones, U.S. Attorney's Office (S.D.N.Y.) (by e-mail)