# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | SUITE 7110
NEW YORK, NEW YORK 10118
TEL (212) 763-0883 | FAX (212) 564-0883
WWW.KAPLANHECKER.COM

DIRECT DIAL 212.763.0889
DIRECT EMAIL shecker@kaplanhecker.com

May 27, 2020

**BY ECF**

The Honorable Margo K. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *Federal Defenders of New York, Inc. v. Federal Bureau of Prisons, et al.,* No. 19 Civ. 660 (E.D.N.Y.)

Dear Judge Brodie:

      We write on behalf of the Federal Defenders pursuant to the Court's Order dated May 19, 2020. *See* Doc. No. 61.

      Since the last conference before Your Honor, we have participated in two joint mediation calls with the government and have sent the government and the mediator significant data about requests for legal access that the Federal Defenders have received over the last two weeks. Unfortunately, we are unable to report significant improvement in terms of the ability of the MDC or the MCC to provide sufficient legal calls to meet the needs of attorneys and their clients held at those facilities. Even with additional calls being placed in the mornings at both facilities, there continue to be substantial numbers of lawyers who have to wait more than 48 hours—in some cases substantially more—to have a legal call or videoconference with their clients. This number is only increasing as lawyers begin to need, and request, hour-long calls or preferably videoconferences to be able to prepare clients for pleas and sentencing (now occurring with greater frequency) and to review discovery and prepare for proffer sessions (which are beginning to resume).

      It is increasingly apparent that, given the COVID-19 crisis and the current state of lockdown at the MDC and the MCC (recently extended to June 18, 2020), "face-to-face" interactions with clients will primarily be virtual in coming weeks and months. And for some attorneys with specific health concerns, such interactions may need to be virtual for even longer. Rather than continue to defer meaningful contact with clients in the hope that there will be a sudden change in the public health situation, we think it makes sense to develop a system now that will enable the building of attorney-client relationships and the review of discovery, to the extent possible. The only realistic avenue to achieving this goal seems to be a rapid and significant

KAPLAN HECKER & FINK LLP

2

increase in the availability of videoconferences at both facilities so that attorneys can "meet with" clients for an hour or two hours—just as judges are doing with court sessions and as attorneys would be doing in person, were that an option. We recognize that this will require an investment of resources by the MDC and MCC. But, without this, there is simply no way to review discovery with a client. Nor can one prepare a client to testify at a preliminary hearing or plead guilty. And that's assuming that the attorney has already forged enough of a relationship with the client prior to the pandemic to be able to engage in such substantive discussions. Many attorneys have been appointed to new cases over the last two months and have never met or seen their clients. Rather than continue to chip away at the lack of access by adding two or three more 15-minute telephone calls, or by working with staff to place calls on a schedule, we need the government to put in place meaningful video access, in addition to providing the legal calls pursuant to the Court protocol.

Other institutions across the country have responded to this reality. Federal Defenders elsewhere have reported that they have robust video access to their clients and their clients are able to review discovery on iPads. And even at Rikers, which has been ravaged by COVID-19, videoconferences are relatively easy to schedule over Skype and appear to be set for a minimum of an hour at a time. The MDC and MCC, by contrast, currently permit only two half-hour web-based conferences per day (MDC) and four half-hour conferences per day (MCC). Meanwhile, almost every lawyer requesting a telephone call would rather have a videoconference were one available. We anticipate that soon, with prosecutions and court proceedings back in fuller swing, at least 10 videoconferences of at least one hour will be required at each facility each day. This will still be significantly less access than when in-person visits were available and lawyers visited each facility from 8 am to 8 pm, 365 days a year.

Videoconferences, of course, are not a perfect solution. It is difficult to review extensive or electronic discovery through a video screen, and virtually impossible to counsel someone on life-altering decisions—whether to plead, whether to cooperate, whether to go to trial—without ever meeting in person. But, as we continue to work toward the resumption of in-person visiting, we believe that an increase in video capacity should occur on a parallel track.

We have attempted to follow Your Honor's guidance that the parties work together on broader plans for increasing attorney access in the months ahead. Yet, to date, the government has been unable to commit to proposing a plan—even a flexible one that might need to change with the evolving circumstances—for the expansion of videoconferencing or the resumption of in-person visiting.

Immediately after the BOP shut down all in-person visitation in mid-March, the parties and the Court rightly focused on the urgent matter of getting whatever legal access was feasible. But it has been over two months now, and the focus must turn to the medium and long term. No matter what "opening" may occur in society at large, the situation at the jails and prisons will likely remain highly restricted for the foreseeable future. Current levels of access are plainly insufficient, and in order to have any realistic hope for improvement, the BOP must develop a plan for expanded access that includes measurable benchmarks with respect to timing and capacity.

To help us assess how mediation might develop from here and whether the process will ultimately benefit the detained individuals whom the Federal Defenders are committed to serve,

KAPLAN HECKER & FINK LLP

3

we hope that the government is willing to answer the following three questions at or before Friday's conference:

1. Is the government able to propose a concrete plan for increasing capacity for regular legal videoconferences of one to two hours in length at both facilities?

2. If so, by what date is the government able to share that plan in the context of mediation?

3. Under what circumstances will the government grant the "case-by-case approval" of in-person visits that is part of the BOP's official Phase Seven Plan but has not been a possibility to date at MDC or MCC?

These questions do not reflect the full set of issues that require sustained attention in the weeks ahead, especially with respect to the resumption of in-person visiting. But they are matters that can be addressed now and are not contingent on future developments on the national level.

We look forward to a productive conference.

Respectfully submitted,

/s/ Sean Hecker
Sean Hecker

cc: Counsel of Record (by ECF)
Hon. Loretta Lynch, Paul, Weiss, Rifkind, Wharton & Garrison LLP (by e-mail)
Roberto Finzi, Paul, Weiss, Rifkind, Wharton & Garrison LLP (by e-mail)
Tony Joe, Paul, Weiss, Rifkind, Wharton & Garrison LLP (by e-mail)
Jeffrey Oestericher, U.S. Attorney's Office (S.D.N.Y.) (by e-mail)
David Jones, U.S. Attorney's Office (S.D.N.Y.) (by e-mail)