# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | SUITE 7110
NEW YORK, NEW YORK 10118
TEL (212) 763-0883 | FAX (212) 564-0883
WWW.KAPLANHECKER.COM

DIRECT DIAL 212.763.0889
DIRECT EMAIL shecker@kaplanhecker.com

June 10, 2020

**BY ECF**

The Honorable Margo K. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

>    Re:   *Federal Defenders of New York, Inc. v. Federal Bureau of Prisons, et al.,* No. 19 Civ. 660 (MKB)

Dear Judge Brodie:

We write on behalf of the Federal Defenders pursuant to the Court's May 29, 2020 Order.

Since the last conference before Your Honor, we have received from the BOP the plan it promised at the May 29th hearing to ramp up towards increased legal access at the MDC through increased availability of video teleconferencing ("VTCs"). Although we appreciate the BOP's efforts, as we set forth in detail for the mediator and the BOP in our response to the plan last week, the modest proposal—which is in all events "subject to modification at the Warden's discretion"—remains far short of ensuring the "meaningful, continuous access to their clients" called for by the Second Circuit. *Federal Defenders of New York, Inc. v. Federal Bureau of Prisons, et al.*, No. 19-1778, slip op. at 2 (2d Cir. Mar. 20, 2020). Indeed, the BOP itself said it best when it previewed its plan at the May 29th hearing: "Will [our plan] be sufficient to provide what plaintiff has stated today is continuous access basically on demand seven days a week? No, it won't." Tr. of May 29, 2019 Conf. at 18. And it doesn't. To the contrary, the BOP's plan—summarized more fully in the appended chart—fails to meet the Second Circuit mandate for several reasons.[1]

*First*, under the BOP's plan, VTCs will be available to attorneys to meet with their clients at the MDC for only 22 hours a week (up from 13 hours at present), far below the 63 hours a week that were generally available for legal visiting before the current health crisis. In addition, prior to the COVID-19 pandemic—*i.e.*, when the Federal Defenders filed this action—multiple

---

[1] At the May 29, 2020 hearing, the BOP was reluctant to place its plan on the public docket. *See* Tr. of May 29, 2020 Conf. at 17. Consequently, the Federal Defenders will not attach it to this public filing and instead summarizes at a high level some of its contents below and in the appended chart. Further, although the BOP's formal proposal covered only the MDC, the BOP also notified the Federal Defenders by e-mail that it planned to increase the availability of VTCs at the MCC from 10 to 15 hours per week, although it noted that 9 of those 15 hours would be conditioned on the court schedule not being too heavy.

attorneys could visit clients at the same time during those 63 hours (indeed on weekday mornings, the busiest time for legal visits, as many as 50 attorneys and paralegals would be visiting with clients at one time), meaning that the 22 hours (and 30 VTCs) available to attorneys each week *in total* under the BOP's plan is vastly below the scope of attorney visitation that occurred in the ordinary course.

*Second*, the BOP's proposal not only falls well short of the MDC's ordinary practices, it lags significantly behind other facilities around the country, certain of which allow attorneys to access their clients by VTC for up to twelve hours a day, seven days week, even during the current health crisis. That is, meaningful, continuous access is actually possible, and is happening right now in other correctional facilities.

*Third*, 12 of the proposed 22 VTC weekly hours in the BOP's plan will be available only via the "Static VTC" from the Brooklyn Courthouse to the SHU at MDC. This requires attorneys to travel to the Brooklyn courthouse rather than participating in the calls remotely, *i.e.*, from their homes. But many attorneys are either unable or justifiably unwilling to subject themselves and their loved ones to the risk of exposure during the current pandemic by traveling to a public building. It also means that if more than one member of the legal team needs to participate in the VTC, they too have to travel to the Brooklyn Courthouse and be in close proximity to one another so that they can communicate through the VTC. Accordingly, this increase in Static VTC hours is not particularly meaningful.

Relatedly, we are concerned that the BOP may intend only to build up its VTC capability until it decides to formally reinstate in-person visitation, which we gather could come as early as July 1, 2020, rather than until the current health crisis dissipates. Indeed, it appears that the BOP has represented to the mediator—as it has separately represented to the Federal Defenders—that its efforts to ramp up its VTC capability need only account for "the time between now and when in-person visitation can be reestablished." Tr. of May 29, 2020 Conf. at 5. But the BOP needs to ensure there is sufficient VTC access until in-person visitation can *safely* be reestablished. It is not enough to formally open up in-person legal visitation if the COVID-19 virus continues to effectively bar a significant number of attorneys from accessing the MDC (or the Brooklyn Courthouse). Rather, given that the COVID-19 pandemic will last for an uncertain yet lengthy duration, the BOP must ensure that its VTC capabilities tether as close as possible to the MDC's ordinary 63 hours per week schedule. For the reasons stated above, the BOP's current proposal falls far short of that.

Although the Federal Defenders understand the significant challenges confronted by the BOP in ensuring that during this pandemic the pre-trial inmates in its charge have "meaningful, continuous access" to their attorneys, it is an obligation that the law imposes on them.

\*   \*   \*

Finally, as the Federal Defenders have raised both with the mediator, *see* Dkt. 60 at 4, Dkt. 65 at 3-4, and with the Court, *see* Tr. of May 29, 2019 Conf. at 19-21, there continue to be serious concerns over the BOP's handling of inmates' legal mail during the COVID-19 crisis. Since raising the issue with the mediator, the Federal Defenders have begun formally tracking the issue, and the results are disturbing. Attorneys representing clients both at the MDC and MCC have reported that (i) BOP staff is opening legal mail before delivering it to clients; (ii) BOP staff is photocopying legal mail, giving the copies to the clients, and seemingly retaining the originals; (iii) correspondence plainly designated as legal mail is being returned to attorneys even though the

attorneys complied with the BOP's own rules for designation of legal mail; and (iv) clients have simply not received their legal mail, or have only received it several weeks after it was sent. This conduct plainly violates not only BOP regulations, *see* 28 C.F.R. §§ 540.18, 540.19, but fundamental constitutional protections, *see Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("Interference with legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution."); *see also Solana v. N.Y.C. Dep't of Corrs.*, 2012 WL 5466425, at *5 (E.D.N.Y. Nov. 8, 2012) (inmates have "a right to be present when [their] legal mail is opened"). And as the Federal Defenders made plain at the May 29th hearing, the problem is a new one that seemingly correlates with the current health crisis, *see* Tr. of May 29, 2020 Conf. at 20-21—it is thus undoubtedly a proper subject for resolution pursuant to the parties' mediation.

We look forward to discussing these issues at the forthcoming conference.

                                                  Respectfully submitted,

                                                  /s/ Sean Hecker
                                                  Sean Hecker

cc:     Counsel of Record (by ECF)
           Hon. Loretta Lynch, Paul, Weiss, Rifkind, Wharton & Garrison LLP (by e-mail)
           Roberto Finzi, Paul, Weiss, Rifkind, Wharton & Garrison LLP (by e-mail)
           Tony Joe, Paul, Weiss, Rifkind, Wharton & Garrison LLP (by e-mail)
           Jeffrey Oestericher, U.S. Attorney's Office (S.D.N.Y.) (by e-mail)
           David Jones, U.S. Attorney's Office (S.D.N.Y.) (by e-mail)

**Appendix—BOP Proposal**

|  | MDC Now | MDC Proposed | MCC Now | MCC Proposed | **Peer Institutions\*\*\*** | MDC/MCC Pre-COVID |
|---|---|---|---|---|---|---|
| **Monday** | 1 hour | 2 hours | 2 hours | 3 hours\*\* | Rikers: 12 hours<br>Westchester: 12 hours<br>Minneapolis: 12 hours<br>San Francisco: 8 hours<br>FDC Sheridan: 7 hours<br>Chicago: 8 hours | 9 hours (*i.e.*, 8 am to 8 pm, with 3 hours of count time) |
| **Tuesday** | 2 hours\*<br>1 hour | 4 hours\*<br>2 hours | 2 hours | 3 hours | Rikers: 12 hours<br>Westchester: 12 hours<br>Minneapolis: 12 hours<br>San Francisco: 8 hours<br>FDC Sheridan: 7 hours<br>Chicago: 8 hours | 9 hours |
| **Wednesday** | 2 hours\*<br>1 hour | 4 hours\*<br>2 hours | 2 hours | 3 hours\*\* | Rikers: 12 hours<br>Westchester: 12 hours<br>Minneapolis: 12 hours<br>San Francisco: 8 hours<br>FDC Sheridan: 7 hours<br>Chicago: 8 hours | 9 hours |
| **Thursday** | 4 hours\*<br>1 hour | 4 hours\*<br>2 hours | 2 hours | 3 hours | Rikers: 12 hours<br>Westchester: 12 hours<br>Minneapolis: 12 hours<br>San Francisco: 8 hours<br>FDC Sheridan: 7 hours<br>Chicago: 8 hours | 9 hours |
| **Friday** | 1 hour | 2 hours | 2 hours | 3 hours\*\* | Rikers: 12 hours<br>Westchester: 12 hours<br>Minneapolis: 12 hours<br>San Francisco: 8 hours<br>FDC Sheridan: 7 hours<br>Chicago: 8 hours | 9 hours |
| **Saturday** | None | None | None | None | Minneapolis: 12 hours<br>San Francisco: 9 hours | 9 hours |
| **Sunday** | None | None | None | None | Minneapolis: 12 hours<br>San Francisco: 9 hours | 9 hours |

---

\* Attorneys must travel to the Brooklyn courthouse to make these VTC calls.

\*\* Subject to court schedule.

\*\*\* There is, of course, a substantial difference between permitting, say, six hours of video conferences per day and permitting video conferencing during six hours of each day. Peer institutions permit multiple video conferences to be scheduled at once, suggesting an even greater difference in capacity than the mere comparison of total hours might suggest.