

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 8, 2020

By ECF
Honorable Margo K. Brodie
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Fed. Defenders of New York, Inc. v. Fed. Bureau of Prisons, et al.*
             Civil Docket No. 19-cv-660 (Brodie, J.)(Gold, M.J.)

Dear Judge Brodie:

      This Office represents Defendants Federal Bureau of Prisons ("BOP") and the Warden of the Metropolitan Detention Center in Brooklyn, New York ("MDC") in the above-referenced matter. We write pursuant to the Court's June 26, 2020 order requiring Defendants to provide a status report ahead of the July 10, 2020 conference in this matter addressing Defendants' efforts to facilitate legal access for individuals housed at MDC and the Metropolitan Correctional Center in New York, New York ("MCC"). As set forth in more detail below, Defendants have continued to provide and implement their plan of expanded telephonic and video teleconference ("VTC") access at both institutions. Defendants also continue to work with the mediator to address issues raised by both parties while simultaneously developing long-term plans that will enable the government to confront challenges posed by the ongoing pandemic as it evolves. Defendants believe the mediation process continues to be helpful in achieving these goals.

      **A.  Defendants' Continued Efforts to Expand Legal Access**

      As a preliminary matter, the MDC is presently receiving four to five times the number of requests for attorney-client meetings than it received at this time a year ago, and is facilitating roughly double the volume of legal meetings now, during a pandemic, than it provided during an average week in July 2019. Specifically, the institution is providing inmates with 44 hours of legal call capacity and 26 hours of VTC capacity per week, and plans to augment that capacity with four additional hours of VTC access starting on July 10.

      Defendants also note that they do not have sufficient information to have a reasoned discussion about the basis for the increased demand for legal calls, how long the increased demand is predicted to last, and how it will be addressed. Further complicating matters, last week, Plaintiff had scheduled what appeared to be a social call for a legal call slot. We immediately flagged this issue because it implicated both security concerns – legal calls are unmonitored – and practical concerns, given the existence of an overflow of legitimate legal calls. Plaintiff has been receptive

to Defendants' concerns, and the parties are discussing ways to ensure that call requests are properly screened before being scheduled. While Defendants appreciate Plaintiff's willingness to address this issue, it only emphasizes Defendants' inability to determine the nature of the legal call requests scheduled by Plaintiff.

Against this backdrop, Defendants continue to provide and implement their plan for expanded legal access.

On June 26, 2020, Defendants provided Plaintiff with information regarding plans to further increase VTC and legal call capacity for the week of June 29. In an effort to reduce backlog, Defendants informed Plaintiff that MDC would facilitate calls during the morning hours on each floor, in addition to the established timeslots for afternoon legal calls. Specifically, Plaintiff can now schedule up to four morning phone calls per floor, and up to five morning calls per floor on Tuesdays and Thursdays, in addition to the "protocol" calls, as an initial way to mitigate call request overflow. The current schedule allows for 88 call slots per day, or, in other words, 44 hours of attorney-client phone access. As always, inmates continue to have access to dedicated Federal Defenders telephone lines to make outgoing calls to their attorneys during times they are in the common areas of their housing units.

In addition, both MDC and MCC have received authorization and have re-introduced evening hours, for legal calls this week and next week. MDC is able to offer additional calls (or VTCs), between 5:30 and 7:30 p.m., on floors 4-8 (five floors) each evening; for each unit, up to two hours of calls can be facilitated either as four half-hour timeslots, two one-hour timeslots, or one one-hour call plus two half-hour calls. MCC is able to offer additional calls (but not VTCs) on three floors between 5 and 8 p.m.; for each unit, up to two hours of phone calls can be facilitated, with some possibility of adjustments to further increase the time allotted for calls involving people housed in units with high call demand.

Both facilities have continued to accommodate emergency requests for legal calls outside of the scheduled time slots, including requests for lengthy calls.

Defendants have also provided additional timeslots for VTCs through use of the Special Housing Unit ("SHU") VTC. This increased SHU VTC capacity has been available for Plaintiff to use since July 1. Defendants also advised Plaintiff that, starting on July 10, MDC would further make the SHU VTC available each Friday for up to four hours.[1] Plaintiff has the discretion to use these increased timeslots to schedule four one-hour VTCs or two two-hour VTCs. Notably, these VTCs will use the EDNY client rooms, and will not require attorneys to travel to the Courthouse.[2]

---

[1] Attorneys may also schedule conferences via a VTC unit in the EDNY Brooklyn Courthouse for timeslots of up to four hours on Tuesdays, Wednesdays, and Thursdays.

[2] Defendants have also provided for four hours of "Floor" VTCs, as opposed to the SHU VTCs, with timeslots available Monday through Friday. This allows for 20 half-hour VTCs per week, for a total of 10 hours per week.

Defendants have remained in close communication with Plaintiff since the last conference regarding each element of its legal access expansion described above.

With respect to Plaintiff's overflow call concerns, Defendants have sought information from Plaintiff in order to implement a targeted approached to expanding legal calls. While some floors at MDC are experiencing an overflow, others have slots that are substantially underutilized. The parties are working through the data to employ strategies to re-allocate resources to serve the high-volume floors and to avoid overflow. Defendants note, however, that this proposed reallocation is still in its preliminary stages. If the institutions are able to implement these strategies in some form, Defendants will advise the mediator and the Plaintiff expeditiously.

In any event, Defendants anticipate that the re-introduction of evening call hours, combined with the expansion of morning calls and additional timeslots for the SHU VTCs, should allow Plaintiff to reduce the backlog of legal call requests. Defendants will continue to work closely with Plaintiff to monitor the situation.

### B. Planning for Resumption of In-Person Legal Visitation

National guidance with respect to Phase VII of BOP's modified operations plan expired on June 30, and was replaced by Phase VIII, effective July 1. BOP has determined that during Phase VIII, which is scheduled to expire on July 31, in-person visitation will remain suspended. Nevertheless, for purposes of discussion within the context of mediation, Defendants have provided to Plaintiff and the mediator information with respect to MDC's preliminary proposal regarding in-person visitation procedures. MCC's proposal will be provided when the institution's plan has cleared initial internal review. Defendants will discuss the proposals with the mediation team and Plaintiff in the near term, but note that the terms governing how and when it will be safe to resume in-person visitation, as well as the institutional preparation, are likely to change as conditions evolve.

### C. Response to Plaintiff's Concerns over Legal Mail

Defendants have investigated a number of Plaintiff's allegations of instances in which legal mail has been opened outside of inmates' presence and photocopied. In each instance that Defendants have investigated, the envelope at issue was not properly labeled. As a result, staff identified the mail as general correspondence and followed the procedure for general correspondence. Specifically, the mail is photocopied and a copy of the mail is provided to the inmate. The originals are maintained for 30 days and then destroyed. MDC and MCC staff have discussed the legal mail policy with staff to ensure proper handling, and have provided a summary of regulations and requirements to Federal Defenders for distribution to the defense bar.

Plaintiff has also raised a concern that some inmates have not received legal mail or that mail has been delayed. Defendants do not have enough information at present to address this concern. The Government has proposed, however, that for the time-being, attorneys send legal mail by certified mail and request a return receipt.

### D. Institutional Security Issue Raised by Plaintiff

Plaintiff has also raised allegations pertaining to reported cell searches last week. Defendants' position is that this issue is only tangentially related, if at all, to the subject matter of this lawsuit. For a variety of reasons, including avoiding divulging any potential law enforcement sensitive information, Defendants submit that it cannot discuss this issue in a public filing or during Friday's conference.

We thank you for Your Honor's consideration of this matter.

Respectfully submitted,

RICHARD P. DONOGHUE<br>
United States Attorney

By:   /s/
Seth D. Eichenholtz
Sean P. Greene
Matthew J. Modafferi
Assistant U.S. Attorneys
718-254-7036/6484/6229
seth.eichenholtz@usdoj.gov
sean.greene@usdoj.gov
matthew.modafferi@usdoj.gov

cc: Counsel of Record (By ECF)

Loretta E. Lynch
Roberto Finzi
Tony Joe
Paul, Weiss, Rifkind, Wharton & Garrison LLP

Jeffrey Oestericher
David Jones
Assistant U.S. Attorneys
U.S. Attorney's Office, S.D.N.Y.