**KAPLAN HECKER & FINK LLP**

350 FIFTH AVENUE | SUITE 7110
NEW YORK, NEW YORK 10118
TEL (212) 763-0883 | FAX (212) 564-0883
WWW.KAPLANHECKER.COM

DIRECT DIAL 212.763.0889
DIRECT EMAIL shecker@kaplanhecker.com

July 8, 2020

**BY ECF**

The Honorable Margo K. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

>   Re:   *Federal Defenders of New York, Inc. v. Federal Bureau of Prisons, et al.,* No. 19 Civ. 660 (E.D.N.Y.)

Dear Judge Brodie:

We write on behalf of the Federal Defenders, pursuant to the Court's Order dated June 26, 2020, to provide an update on the issues discussed at the last conference before Your Honor: (1) planning relating to the resumption of in-person legal visiting, (2) increasing capacity to handle requested legal VTCs and telephone calls, and (3) problems relating to legal mail.

**In-person visiting.** As the Court is aware, we have repeatedly asked about the facilities' specific plans for in-person visiting. We have not yet learned when either facility plans to re-open for in-person visits. We do not even know what general policy the BOP currently has in place: the prior public guidance relating to in-person visiting expired on June 30, and while we have been told that new guidance has been issued, we do not know the substance of it. While we had gathered that legal visiting did not re-open on June 30, we learned only from the government's status report to the Court this evening that in-person visitation will remain suspended throughout BOP facilities until July 31. *See* Doc. No. 77 at 3. That said, the BOP has resumed daily in-person visiting elsewhere, including at FDC Philadelphia, which is a large pretrial detention facility, like the MDC and MCC.

This afternoon, MDC provided us with a detailed plan for protocols for in-person visits, which we will study and hope to discuss in detail with the BOP and the government on a mediation call scheduled for tomorrow. We have not received any formal plan from the MCC.

Oftentimes in our discussions with the government, we are told that the MDC and MCC cannot provide us with information or plans because they are awaiting national or regional BOP guidance. We understand the practicalities of BOP bureaucracy and have attempted to be patient given those realities. But the government's repeated responses about the need to await BOP

guidance miss a fundamental point: the BOP is a party to this lawsuit. The Court will direct the BOP and the other parties, not the other way around. The parties will never make progress absent a Court order if the government's view is that it will simply do what national BOP management commands and no more.

**VTC and telephone call capacity.** We continue to experience significantly greater demand for legal VTCs and telephone calls than the capacity provided at the MDC and MCC. Although both facilities have taken steps to increase capacity beginning today (though potentially only temporarily at the MCC, depending on future availability of TDY staff), there remains a significant, unmet need for legal access.

As has been true for some time, demand is consistently high on specific units at each facility. The current schedule for calls at the MDC and MCC provides equal capacity on each unit, and thus, because demand varies widely by unit, leaves some call slots unused each day (on the lower population and sentenced units), and other call requests pending for lengthy periods. We have asked if staff or equipment could be increased for the high-demand units, or resources otherwise re-allocated to better meet actual need. The MCC has agreed to allow this to happen for evening calls that will be available over the next two weeks—a helpful accommodation, but only for as long as the evening call slots remain available. We have not yet heard back from the MDC with respect to our request.

We have documented the capacity shortcomings and provided the government and the mediator with detailed reports, by unit or floor, on a twice-weekly basis. The data demonstrates what we have warned about for months: demand for legal access has increased as court proceedings have resumed and new indictments have been returned, and it often takes multiple short VTCs and telephone calls to approximate the type of multi-hour meeting that an attorney traditionally could do in person.

We are thus surprised to read the government's suggestion that it does not have "sufficient information to have a reasoned discussion about the basis for the increased demand for legal calls, how long the increased demand is predicted to last, and how it will be addressed." Doc. No. 77 at 1. That suggestion also belies a fundamental misunderstanding of the BOP's Sixth Amendment obligations. The question is not whether the BOP fully understands why inmates want to speak with their attorneys; it is whether the BOP has put in place a system that can handle the demand for legal access that inevitably follows from the prosecutions the government has chosen to pursue.

We will continue to be fully transparent in our understanding of the need for legal access. We would also welcome the participation of the Criminal Division of the U.S. Attorney's Office, as Judge Gold suggested at the last conference. Tr. of June 26, 2020 Conf. at 13 ("I heard what you just said about getting input from the Federal Defenders . . . . I think it is going to be very important for you and the Bureau of Prisons to be coordinating with the Criminal Division as it anticipates additional proceedings before the Court, to make sure that counsel have an opportunity to prepare for them and that the video bandwidth needed for the Court proceedings is made available without compromising the right of counsel to have access to their clients to prepare for those proceedings.").

KAPLAN HECKER & FINK LLP

3

**Legal mail and issues relating to legal documents.** We have continued to flag issues relating to legal mail to the government and the mediator. The government continues to state that any such issues have been caused by insufficient labeling of envelopes. We are troubled by this explanation. While we cannot speak for every envelope mailed by a CJA or private lawyer, Federal Defender clients have repeatedly had their mail opened outside their presence, despite the fact that the Federal Defenders use pre-printed envelopes that make clear that the sender is an attorney and include the following additional language: "Special Mail: Open Only In the Presence Of the Inmate." Given that the Federal Defenders' mailing practices have remained the same pre-pandemic to now, yet the current problems with legal mail appear to be new, it is difficult to accept the government's representation that the MDC and MCC have consistently followed the law requiring that all legal mail be opened in front of inmates, and that any departures from these requirements are of defense counsel's own making. We have also flagged an instance in which, at the end of May, the U.S. Attorney's Office in the SDNY sent discovery directly to an inmate at the MCC, as it frequently does in large co-defendant cases, and that discovery was never received. No explanation has been provided. As the Court is aware, criminal defendants' need to have their own copy of discovery and other documents is only heightened during this time, when counsel cannot bring documents in person for review and must try to review discovery by telephone or VTC.

Unfortunately, since our last conference, concerns relating to legal documents have extended beyond legal mail. As Your Honor is aware, the MDC cancelled all legal calls, VTCs, and court appearances on June 25, without warning or explanation beyond an "institutional emergency." Last week, the Federal Defenders and CJA counsel began receiving numerous reports from clients housed on the fourth, fifth and sixth floors of the MDC regarding a search for contraband (apparently related to this institutional emergency) by a Special Operation Response Team (SORT) that took place from June 26 through 29. In addition to reports of physical aggressions and racists taunts by SORT officers, the Federal Defenders are aware of at least seven instances in which legal documents or discovery CDs were taken from inmates' cells and destroyed during the search. The Federal Defenders and CJA counsel have raised concerns about the SORT officers' actions with Mr. Eichenholtz and Ms. Pratesi, and have identified the names and register numbers of people whose legal documents were subject to destruction or seizure. We have yet to receive any information in response. Defendants' contention that the destruction of inmates' legal documents by MDC officers is only tangentially related to this lawsuit is of further concern.

\* \* \*

Although the government has announced a modest expansion of capacity for the coming weeks, we are concerned that the mediation process is falling short of what it could achieve. We have not had a mediation session since the last court conference. We have a mediation session scheduled for tomorrow, but we had specifically requested that it take place before this submission was due, so that we might try to work through some of these issues before putting them before the Court. The government was not available to meet until Thursday.

We look forward to discussing the substantive attorney access issues, as well as the ways in which the mediation process might be improved.

KAPLAN HECKER & FINK LLP

4

                                                Respectfully submitted,

                                                /s/ Sean Hecker
                                                Sean Hecker

cc:    Counsel of Record (by ECF)
        Hon. Loretta Lynch, Paul, Weiss, Rifkind, Wharton & Garrison LLP (by e-mail)
        Roberto Finzi, Paul, Weiss, Rifkind, Wharton & Garrison LLP (by e-mail)
        Tony Joe, Paul, Weiss, Rifkind, Wharton & Garrison LLP (by e-mail)
        Jeffrey Oestericher, U.S. Attorney's Office (S.D.N.Y.) (by e-mail)
        David Jones, U.S. Attorney's Office (S.D.N.Y.) (by e-mail)