**KAPLAN HECKER & FINK LLP**

350 FIFTH AVENUE | SUITE 7110
NEW YORK, NEW YORK 10118
TEL (212) 763-0883 | FAX (212) 564-0883
WWW.KAPLANHECKER.COM

DIRECT DIAL 212.763.0889
DIRECT EMAIL shecker@kaplanhecker.com

July 20, 2020

**BY ECF**

The Honorable Margo K. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *Federal Defenders of New York, Inc. v. Federal Bureau of Prisons, et al.,* No. 19 Civ. 660 (E.D.N.Y.)

Dear Judge Brodie:

      We write on behalf of the Federal Defenders in opposition to the government's motion to vacate the Court's order directing the government to provide "evening hours at the MDC for legal calls until the backlog of requests has been eliminated." ECF Minute Entry dated July 10, 2020. For the reasons set forth below, the Court's order should remain in place at least until in-person legal visiting meaningfully resumes.

      We begin by making clear what the government's motion obscures: demand for legal access at the MDC continues to exceed supply, and many attorneys continue to wait more than 48 hours—in some case, days more—before they can speak with their clients. As we reported to the government and the mediator at the end of last week, there were 14 requests for VTCs and 55 requests for telephone calls that had been pending for more than 48 hours. If evening hours were not available, those numbers would increase to 27 and 82, respectively.

      Although the recent addition of evening hours has been a critical tool to stem overflow, the government now seeks permission to abandon those hours if it chooses. The government offers four arguments for why the Court's order should be vacated.

      *First*, the government argues that "the parties, through the mediation process, are successfully managing any backlog of requests." Doc. No. 82 at 1. But as already noted, the backlog of requests is not going away, and reversing course on evening hours would only exacerbate the issue.

      Moreover, the record belies the government's suggestion that the Court's assistance has not been needed to ensure that evening hours are available. The Federal Defenders began raising

the issue of evening hours toward the start of the mediation process. The government's response was that it had "discussed" the issue with the Federal Defenders, it had "discussed" the issue with the mediator, but "[q]uite frankly, the issue is staffing." Tr. of Apr. 10, 2010 Conf. at 22; *see also* Tr. of May 8, 2020 Conf. at 43 ("Ms. Von Dornum and I have discussed this. We have discussed it through the mediation process – it's a staffing issue . . . ."). It was the Court that made clear that that excuse would not suffice: "[I]t's something that you have to look into, because if the calls cannot be accommodated during the afternoon slot in addition to the morning slot, then you are going to have to do so in the evening. And then based on the fact that the number of calls have been increasing and courts are now scheduling more matters, which means that they will be increasing even more, you really need to start thinking about how to accommodate additional calls in the evening[.]" Tr. of May 8, 2020 Conf. at 43.

The Federal Defenders continued to report on capacity issues after that conference. *See, e.g.*, Doc. No. 59 at 3. In June, the BOP finally arranged for evening calls at the MDC—but only for week-long period. The Federal Defenders continued to report a large backlog of requests for legal access at the facility. Tr. of June 26, 2020 Conf. at 10–11. Although the government again added evening hours in early July, it would not commit to providing "evening hours for as a long as there's a backlog that needs to be taken care of." Tr. of July 10, 2020 Conf. at 15. The government insisted that it understood "the importance of having" evening hours, but it could not say "with certainty" that they would remain available. *Id.* The Court's current order is thus the only thing ensuring that there is no backslide on overflow issues as the parties use the mediation process to address the lack of sufficient legal access and the impending return of in-person visiting. This is not to assign any ill intent or lack of desire to address the backlog to the BOP; rather, it appears that without the Court's order, staffing is not certain.

**Second**, the government argues that the BOP's efforts should be evaluated in light of the fact that, in the government's telling, the number of calls and VTCs currently offered each day is greater than the daily average of 22 in-personal legal visits at the MDC "at this time last year." Doc. No. 82 at 2. This is an apples-to-oranges comparison. First, the government's reference to the 22 in-person visits misses a crucial point: those visits were in addition to client phone calls and meetings with clients at the courthouse. Second, pre-pandemic in-person visits were not limited in duration, unlike the standard 30-minute legal calls or VTCs under the protocol. And even then, a series of remote conversations cannot replicate an in-person visit of equal length in terms of reviewing discovery or building client trust. The government seems to criticize the fact that, in preparing the call and VTC schedules, the Federal Defenders have, "from time to time, used multiple slots for one attorney-client communication or provided a number of slots over the course of the week to one attorney for one client." Doc. No. 82 at 4–5. But until attorneys can safely return to the facility for in-person visits without time limits, spreading an attorney's work over multiple time slots is exactly what is required.

More importantly, the Sixth Amendment is not satisfied simply because the legal access currently provided might match an arbitrary average of past in-person visits of unknown duration. The question is whether the government is providing sufficient legal access based on current needs, driven by the government's current prosecutorial activity. We have warned for months that the MDC was not prepared for the demand for legal access that would surely follow the return of new indictments and the pick-up of criminal proceedings. The federal government in general, and the

very U.S. Attorney's Office responsible for most of those proceedings in particular, should not have been caught off guard.

*Third*, the government argues, in effect, that the Court should not be concerned if attorneys have to wait more than 48 hours or longer to speak with their clients because "the existence of excess requests, taken alone, is an unreliable indicator." Doc. No. 82 at 4. The government seems to think that because some attorneys specify a "drop-dead" date by which their call is needed, there is no Sixth Amendment concern raised by having to wait over 48 hours—and, in fact, often until that final day—to have a conversation with their client. Attorneys provide the deadline for the call because they know that, right now, there are long delays and they want to ensure that, at the very least, they speak to their client prior to the proceeding or filing at issue. But every attorney would rather have a call sooner, and perhaps even the opportunity for a second call or VTC, so as to better represent their client. BOP regulations themselves guarantee the opportunity for visiting on a seven-days-a-week basis, 28 C.F.R. § 551.117(a), and generally prohibit any limitation on "the frequency of attorney visits since the number of visits necessary is dependent upon the nature and urgency of the legal problems involved," 28 C.F.R. § 543.13(b). When each week ends with a substantial number of attorneys who have waited 48 hours or more to speak with their clients at the MDC, these guarantees are not being upheld. Moreover, overflow from one week affects those attorneys wishing to speak with their clients the next by further reducing the available supply of calls. The entire premise of daily, unlimited legal visiting is that the system must be prepared to handle the needs as they arise.

*Finally*, the government argues that the Court's order "works at cross-purposes with the mediation process" and that it was unfair for the Court to enter the order without affording the government a "full opportunity" to be heard. Doc. No. 82 at 1, 5. However, the parties have discussed the specific issue of evening hours at countless court conferences and mediation sessions. The Court itself directed the government to consider how evening hours could be used to satisfy demand for legal access back in May and then waited nearly two months before entering an order.

Moreover, the Court's order is in service of mediation, not in frustration of it. Four months ago, the Second Circuit stated that Federal Defenders had "raised claims of the utmost gravity" regarding the "curtailment of the ability of pretrial detainees and others confined at the MDC to consult with legal counsel." Slip op. at 25. When it remanded this case, the Circuit suggested that this Court "appoint a master to mediate the parties' differences" in order "to ensure that the Federal Defenders have meaningful, continuous access to their clients either in person or by remote access pending adjudication of these claims." *Id.* at 2. It made that statement while noting that "as we write this opinion, a different and even more dramatic challenge is presented by COVID-19" and that "litigation after the fact" might be insufficient to address the harms that such an emergency might cause. *Id.* at 27. The Circuit recognized that the rights at stake were "inextricably linked to the legitimacy of our criminal justice system" and that the "judicial branch bears a unique supervisory responsibility for ensuring that the right of legal consultation is not unnecessarily restricted by prison authorities." *Id.* at 25, 26.

The Court's assistance in maintaining some floor of legal access appropriately assures meaningful, continuous access for defense counsel and is essential to providing the space for

KAPLAN HECKER & FINK LLP

4

mediation to continue. The Court's order requiring evening hours just until the "backlog of requests has been eliminated" is properly tailored to the issues presented and fully consistent with the Second Circuit's mandate.

      The looming issue for the mediation is the partial resumption of in-person legal visiting, which we are told may be permitted under national BOP guidance on August 1. We respectfully request that the requirement of evening hours remain in place at least until in-person visiting at the MDC meaningfully resumes, at which point the parties, the mediator, and the Court will be in a better position to evaluate the situation.

      Respectfully submitted,

      /s/ Sean Hecker
      Sean Hecker

cc:    Counsel of Record (by ECF)
      Hon. Loretta Lynch, Paul, Weiss, Rifkind, Wharton & Garrison LLP (by e-mail)
      Roberto Finzi, Paul, Weiss, Rifkind, Wharton & Garrison LLP (by e-mail)
      Edward Nasser, Paul, Weiss, Rifkind, Wharton & Garrison LLP (by e-mail)
      Jeffrey Oestericher, U.S. Attorney's Office (S.D.N.Y.) (by e-mail)
      David Jones, U.S. Attorney's Office (S.D.N.Y.) (by e-mail)