

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

---

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 5, 2020

By ECF
Honorable Margo K. Brodie
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Fed. Defenders of New York, Inc. v. Fed. Bureau of Prisons, et al.*
             Civil Docket No. 19-cv-660 (Brodie, J.)(Gold, M.J.)

Dear Judge Brodie:

      This Office represents Defendants Federal Bureau of Prisons ("BOP") and the Warden of the Metropolitan Detention Center in Brooklyn, New York ("MDC") in the above-referenced matter. We write pursuant to the Court's July 29, 2020 order requiring Defendants to provide a status report ahead of the August 7, 2020 conference in this matter addressing Defendants' efforts to facilitate legal access for individuals housed at MDC and the Metropolitan Correctional Center in New York, New York ("MCC"). As set forth in more detail below, Defendants continue to implement their plan of expanded telephonic and video teleconference ("VTC") access at both institutions. Defendants also continue to work with the mediator and Plaintiff to plan for the eventual re-opening of in-person visitation at both institutions.

### A. Defendants Have Eliminated the Legal Call Request Backlog

      At the outset, Defendants are pleased to report that, as of July 28, 2020, the MDC eliminated, *i.e.*, reduced to zero, the number of legal telephone call requests that had been pending more than 48 hours. Accordingly, Defendants have fully complied with the terms of the Court's July 10, 2020 order. *See* ECF Minute Entry dated July 10, 2020 (requiring Defendants to provide "evening hours at the MDC for legal calls until the backlog of requests has been eliminated").[1]

---

[1] To the extent Plaintiff argues the existence of 14 "overflow" requests on the spreadsheet report covering this past week, which they produced to Defendants yesterday, Defendants note that five of those requests specified a date for the call outside of the default, 48-hour window. Additionally, at least one other request appears to have come from an individual who is not the inmate's criminal attorney (and based on a review of the New York attorney registration database, may not be an attorney at all). As discussed in Section B, *infra*, given the lack of certainty regarding whether the remaining eight calls are "true" overflow, Defendants submit that there has been no demonstrable recurrence of any backlog.

**B. Defendants Have Sought Plaintiff's Reasonable Cooperation in Preventing the Recurrence of a Backlog**

Consistent with the parties' discussions over the past several months about ways to ensure that calls regarding pending criminal matters are being prioritized by Plaintiff and facilitated expeditiously by Defendants, on July 30, 2020, Defendants formally proposed a straightforward and easily-implemented system by which Federal Defenders could screen the requests they receive. Importantly, because Plaintiff is already scheduling calls, and the information Defendants propose Plaintiff solicit from requesters is standardized, the proposed system places no significant, additional administrative burden on Plaintiff. Rather, in service of Federal Defenders' interest in maintaining confidentiality, under the system, Plaintiff would merely serve as a passive—but critical—gatekeeper in the effort to ensure constitutionally-required, meaningful access is maintained during the period before the prison re-opens for in-person visitation.

Currently, Plaintiff is utilizing their own system to schedule calls for all individuals who request a legal call. Asking Plaintiff to obtain limited information about the requesters and the nature of the calls as part of this system will allow for some assurance that Plaintiff is scheduling legal calls, and collecting data regarding demand, that is consistent with the objective behind this process: to maintain meaningful access between inmates and criminal defense counsel. Without this information, calls that have no connection to the Sixth Amendment—such as for civil or immigration matters or social conversations—may continue to displace calls that are required to maintain constitutional access.

In addition to helping the parties assess which legal call requests pertain to inmate's criminal matters, and implicate the inmate's Sixth Amendment rights, and which pertain to civil or other matters, this screening information will help to improve the demand and "overflow" data collected by Plaintiff. The government was unaware until recently that Plaintiff was counting requests in connection with non-criminal matters in the count of "backlog" calls. Defendants submit that this practice improperly inflates the alleged call "backlog." Defendants should not be required to shoulder the burden of facilitating all call requests within 48 hours of receipt based on the presumed urgency of attorney-client contact in criminal matters where non-attorney or non-criminal calls are included in that burden. That is not to say that Defendants will not undertake their best efforts to facilitate those other calls as quickly as possible—only that criminal calls will be given priority status.

While Plaintiff initially rejected Defendants' proposal regarding the proposed screening system as overly burdensome, the parties have continued their discussions this week; as of this writing, however, the parties have not reached agreement.

**C. The Robust Legal Access Provided by the Institutions**

Both MDC and MCC continue to offer legal access every weekday, during the morning, afternoon, and evening. MDC currently offers 92 call slots, or 46 hours, of legal access per day. Further, MDC continues to offer approximately 36 hours of VTC access per week. MDC continues to work to increase the amount of VTCs that can be accessed from any location, rather than going to the EDNY Courthouse. MCC also offers legal access and VTCs on each unit, during morning,

afternoon, and evening hours. Both MDC and MCC commit to maintaining this robust level of remote access until in-person visitation resumes.

### D. Planning for Resumption of In-Person Legal Visitation

Defendants continue to work with the mediator and Plaintiff to plan for the resumption of in-person visitation at the institutions. As the mediator reported at the July 24 conference, "both institutions have provided [] detailed plan[s]" regarding visitation. July 24 Status Conf. Tr. at 6. Over the past two weeks, the parties have continued to discuss Defendants' proposals and Plaintiff's suggestions. Defendants continue to revise their plans based on Plaintiff's feedback and had been awaiting national guidance before submitting the plans for final approval. Phase VIII of BOP's Modified Operations expired on July 31, 2020, but it was not until today that MDC and MCC learned of newly issued guidance. We are currently reviewing that guidance and expect to provide an update regarding in-person visitation to Plaintiff and the mediation team shortly.

Defendants have assured Plaintiff that there will be a transition period following the resumption of in-person visitation, during which time Defendants will continue to offer the current forms of remote access—*i.e.*, VTC and calls. The parties continue to discuss the details of the transition plans in the mediation process.

Finally, the parties continue to discuss the timing and parameters of the "walk-through," or tour, of the institutions' visiting areas that Plaintiff has requested. While Defendants are not opposed in principle to the limited walk-through, the authority to conduct the tour resides with the Deputy Director of the BOP, in consultation with the Wardens and Regional Office. Further, given the degree of insight into the institutions' planning and the opportunity for comment Defendants have afforded Plaintiff, there is no urgency at present for a tour, particularly since the institutions have yet to make the final modifications to the physical spaces called for in the plans. Defendants anticipate that, as the resumption of in-person visitation draws nearer in the coming weeks, they will provide Plaintiff with a more definitive proposal.

We thank the Court for its time and consideration regarding these matters.

Respectfully submitted,

SETH D. DuCHARME
Acting United States Attorney

By:            /s/

Seth D. Eichenholtz
Sean P. Greene-Delgado
Matthew J. Modafferi
Assistant U.S. Attorneys
718-254-7036/6484/6229
seth.eichenholtz@usdoj.gov
sean.greene@usdoj.gov
matthew.modafferi@usdoj.gov

3

cc:      Counsel of Record (By ECF)

        Loretta E. Lynch
        Roberto Finzi
        Tony Joe
        Paul, Weiss, Rifkind, Wharton & Garrison LLP

        Jeffrey Oestericher
        David Jones
        Assistant U.S. Attorneys
        U.S. Attorney's Office, S.D.N.Y.