# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | SUITE 7110
NEW YORK, NEW YORK 10118
TEL (212) 763-0883 | FAX (212) 564-0883
WWW.KAPLANHECKER.COM

DIRECT DIAL 212.763.0889
DIRECT EMAIL  shecker@kaplanhecker.com

September 2, 2020

**BY ECF**

The Honorable Margo K. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   *Re:* *Federal Defenders of New York, Inc. v. Federal Bureau of Prisons, et al.,* No. 19
       Civ. 660 (MKB)

Dear Judge Brodie:

  We write on behalf of the Federal Defenders, pursuant to the Court's Order dated August 21, 2020, to provide an update on the currently disputed issues between the parties, which relate principally to the forthcoming resumption of in-person legal visiting at the MDC and MCC.

  **MDC.**  As Your Honor is aware, in advance of the resumption of in-person legal visiting at the MDC (which the BOP has represented is scheduled for September 10, 2020), the Federal Defenders and their counsel toured the facility on August 19, 2020, along with Seth Eichenholtz of the U.S. Attorney's Office and Holly Pratesi of the BOP, and the mediator, the Hon. Loretta E. Lynch.  The Federal Defenders identified a number of issues during that visit and the parties have been working to resolve them.  Although certain issues remain unresolved—such as information about the HVAC system—the Federal Defenders have confidence that these issues can be worked out collaboratively with the BOP in the mediation process.

  That said, the Federal Defenders have other concerns that stem from the BOP's efforts in the previous week or so to allow a limited set of in-person visits in advance of the planned re-opening of in-person legal visiting (what the BOP has referred to the mediator as "test cases").

  *First*, we were concerned to learn from two Federal Defenders attorneys who visited the facility today that MDC staff members were not abiding by certain basic protective health measures that are crucial in curtailing the spread of COVID-19 amongst not just visitors, but staff and inmates.  Specifically, the attorneys reported the following:  (i) their temperatures were not taken; (ii) they were not provided COVID questionnaires or asked any screening questions; (iii) they were not given sanitizing wipes for their lockers or keys and were told that they were unavailable; (iv) correctional officers were grouped together in small spaces and several were wearing their face masks under their chins or not at all; (v) the client the attorneys were visiting did not have a face mask provided by the institution but rather had been compelled to sew one

KAPLAN HECKER & FINK LLP                                                                                 2

together herself, resulting in an ill-fitting mask that fell off repeatedly during the visit; and, (vi) the attorneys observed contractors entering the building without having their temperatures taken or screening questions being administered. We raised these issues on our joint call with the mediator today. We know that the Civil Division took this report seriously. However, it raises—in this new and very serious context—the specter of the problem that has persisted at MDC for many years of officers not following the institution's own rules.

*Second*, we were also troubled by the fact that the defense bar was left out of the process by which the BOP initially selected inmates to receive the two "test case" visits. Indeed, we were taken by surprise to learn that the BOP offered one of the first such opportunities to pre-trial inmate Ghislaine Maxwell last week. At the time of the visit, Ms. Maxwell had been detained in the MDC for less than two months—far less than a significant number of MDC inmates, including individuals charged capitally, individuals with serious mental health issues, and individuals who have never met their court-appointed counsel because of the pandemic, making the establishment of trust nearly impossible. Further, reports indicate that Ms. Maxwell was allowed to meet with two of her attorneys for three hours, despite the BOP's representations to the Federal Defenders that once in-person visitation begins inmates will only be able to meet with one attorney for a one-hour window absent special approval.[1]

On a joint call with the mediator today, the BOP represented that Ms. Maxwell was selected for an in-person "test case" visit simply because she was purportedly one of only three inmates that had a "pending" request and that the BOP did not consider whether there might be inmates with a greater need for a legal visit. This was a puzzling explanation, for several reasons: (i) despite the near constant interaction between the BOP and the Federal Defenders, the BOP never informed the Federal Defenders that they were accepting requests for in-person visits ("test cases" or otherwise) or sought input on these test visits, but, rather, consistently said they were working towards case-by-case in person visits; (ii) Federal Defenders has made crystal clear that there are a number of clients in desperate need of visits, which is why they have pushed for re-opening of visitation; (iii) a CJA attorney in fact had a pending request for an in-person visit for a capital client that was first made in March and renewed several times thereafter, most recently in mid-August and was not offered a visit last week; and (iv) the MDC's apparent blindness to the primary purpose of a legal visit—to provide Sixth Amendment access to those held at the MDC—harkens back to what began this litigation over 18 months ago.

The foregoing begs serious questions about what criteria the BOP intends to use to determine which inmates will be allowed to receive in-person legal visits, what those visits will look like, and how they will be scheduled. These issues are made all the more pressing given that the MDC will for the first time exercise total control over who receives legal visits, rather than such visits being provided on a first-come, first-served basis. MDC, in stark contrast to MCC, has not been willing to discuss using an online scheduling system for legal visits, which would allow equal access to all legal visitors and inmates. We intend to pursue these issues further with the mediator, and, if necessary, the Court.

**MCC.** The Federal Defenders are scheduled to conduct a walk-through of the MCC tomorrow, September 3, 2020, prior to the resumption of in-person legal visiting. It is our

---

[1] We also understand that another high-profile inmate, Keith Raniere, was also recently allowed a four hour in-person legal visit with two lawyers.

understanding that the MCC intends to resume such visiting in the week or two that follows our visit. We look forward to the opportunity to provide feedback to the BOP as we did with the MDC. We have asked to be able to visit not only the main legal visiting room, but also the SHU visiting room on 10 South, where the four inmates held under SAMs must be visited. Thus far, the MCC has refused to allow us to walk through the SHU legal visiting room but we have asked that our request be renewed with the Warden this evening, given the high need for legal visits by these four inmates and the very small spaces in which these SHU visits are conducted.

**VTCs and Telephone Calls.** The Federal Defenders continue to appreciate the efforts of the BOP to allow for a reliable system of VTCs and telephone calls, and we were pleased to hear the BOP confirm with the mediator that they intend to keep the current system in place even after in-person visiting resumes. We have noticed a recent backlog of calls on the 5th and 7th floors of the MDC, but we are confident that we can continue to address this type of issue collaboratively with the BOP through the mediation process.

**Participation in Mediation Sessions of a BOP Representative with Decision-Making Authority**. Repeatedly in our mediation sessions the Federal Defenders have raised key issues only to be told that the Civil Division or the BOP Staff Attorneys do not have authority to speak for the facility, which then leads to, at times, lengthy back-and-forths between mediation sessions before an answer is received. For example, even the clear issue of whether MDC would permit a walk-through prior to re-opening required numerous requests and, eventually, the mediator holding a telephone conference with the Warden. In order to facilitate the resolution of issues in a timely and clear manner, Federal Defenders respectfully asks that the Court require, pursuant to E.D.N.Y. Local Civil Rule 83.8(c), attendance at the mediation sessions by a representative of the BOP with authority to bind the MDC

\*   \*   \*

Thank you for your continued attention to these important issues.

Respectfully submitted,

/s/ Sean Hecker
Sean Hecker

cc: Counsel of Record (by ECF)
Hon. Loretta Lynch, Paul, Weiss, Rifkind, Wharton & Garrison LLP (by e-mail)
Roberto Finzi, Paul, Weiss, Rifkind, Wharton & Garrison LLP (by e-mail)
Edward Nasser, Paul, Weiss, Rifkind, Wharton & Garrison LLP (by e-mail)
Jeffrey Oestericher, U.S. Attorney's Office (S.D.N.Y.) (by e-mail)
David Jones, U.S. Attorney's Office (S.D.N.Y.) (by e-mail)