**KAPLAN HECKER & FINK LLP**

350 FIFTH AVENUE | SUITE 7110
NEW YORK, NEW YORK 10118
TEL (212) 763-0883 | FAX (212) 564-0883
WWW.KAPLANHECKER.COM

DIRECT DIAL 212.763.0889
DIRECT EMAIL shecker@kaplanhecker.com

December 16, 2020

**BY ECF**

The Honorable Margo K. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:    *Federal Defenders of New York, Inc. v. Federal Bureau of Prisons, et al.,* No. 19 Civ. 660 (MKB)

Dear Judge Brodie:

We write on behalf of the Federal Defenders to provide an update pursuant to the Court's Order dated December 9, 2020.

**In-person visiting.** The health situation has gotten much worse at the MDC. As of today, there are 105 inmates at the facility who have tested positive for COVID-19—a dramatic increase since the beginning of the month.[1] Due to the soaring coronavirus numbers, the MDC has suspended all in-person legal visiting.

We continue to have grave concerns about MDC staff's refusal to wear masks or to wear masks properly. At the last conference before Your Honor, we noted that while government counsel has been receptive to our concerns about masking issues, our understanding (from the staff themselves) was that union rules prevented the MDC from disciplining staff who fail to abide by masking rules. Tr. of Dec. 4, 2020 Conf. at 20-21. Because the government did not have the necessary information to address that issue at the conference, *id.* at 22-23, we followed up immediately after the conference and requested that the government share with us the "specific enforcement measures MDC is able to use with respect to staff who do not wear masks or do not

---

[1] The government writes that the MDC has experienced only a 2.9 percent positivity rate among the inmate population. *See* Doc. No. 134 at 1 n.1. That figure, which is based on the total number of tests conducted since the beginning of the pandemic, is highly misleading. There are 105 inmates at the MDC who are *currently positive* for COVID-19, according to the BOP's national website, which reports current cases by facility and is updated each weekday. *See* www.bop.gov/coronavirus. There are 1,298 inmates at the MDC. *See* https://www.bop.gov/locations/institutions/bro/. As of December 2, there were only four positive cases at the MDC, meaning that the total number of positive cases at the MDC has increased by more than 2,500 percent in the last two weeks.

wear masks properly." The government has generally insisted that the MDC will take enforcement action as appropriate, but to date we are unaware of any having been taken.

A remedy is needed. Even with the soaring COVID-19 numbers at the facility, we continue to receive reports that MDC staff are not consistently wearing masks, including on quarantine units. Because of staff movement within the facility, MDC staff's refusal to abide by the most basic safety procedures puts hundreds of inmates at risk. Indeed, we understand that the first female inmate tested positive this week. That individual has been at the facility since October, housed in a separate building from the male inmates where the outbreak began, and has had no visitors since her arrival. We also understand, however, that officers without masks regularly move through the open women's dormitory unit for nighttime counts. When women have requested that the officers put masks on, the officers have responded with laughter.

It is, of course, impossible to know exactly how COVID-19 spread to the women's unit. But there can be no dispute that noncompliance with masking rules poses an immediate threat to the individuals housed at the MDC, and risks needlessly prolonging the time during which in-person legal visiting is curtailed due to coronavirus concerns. We will continue to share with the government the reports we receive from inside the facility, but the little progress we have seen on masking to date gives us little hope of a mediated resolution.

Separately, we continue to engage with both the MDC and MCC on issues relating to air quality and HVAC systems. We learned this week that the government will permit a vapor test at both facilities, although it has not yet committed to a date by which such tests will be performed. We will continue to work on this issue through the mediation process.

In-person visiting at the MCC continues for clients who are not housed on quarantine units. As of today, four units at the MCC are on quarantine status. While some attorneys continue to go to the MCC, the combination of the coronavirus outbreak and the lack of information about air circulation in the legal visiting rooms has made many hesitant to visit in person.

**Telephone calls and VTCs.** The curtailment of in-person visiting at the MDC has resulted in greater demand for legal telephone calls and VTCs, and the overflow numbers we have been reporting for specific floors over the past month have only increased. This is especially true of the seventh floor, where two of the three units are under quarantine. The MDC has installed an additional phone on one of those units, and it has said that it intends to install an additional phone on every remaining unit in the facility. There is not, however, a set date for those new phones' installation. We also understand that the government is working to find a way for quarantined units to have access to VTCs. Without VTC access, inmates under quarantine have no ability to review discovery with their attorney and, given the lockdowns that keep inmates in their cells for 23.5 hours every other day, and 24 hours on the remaining days, those inmates have no ability to individually review electronic discovery on their units.

Demand for remote access is also outpacing capacity on the fifth and seventh floors of the MCC. We have requested additional call and VTCs slots to address current shortages. With the anticipated resumption of criminal trials in the S.D.N.Y. in January, we expect demand on the MCC's pretrial units to only increase.

We will continue to work with the mediator and the government to ensure that the demand for remote access is being met.

KAPLAN HECKER & FINK LLP

3

**Legal mail**. We have raised concerns in mediation regarding legal mail that is significantly delayed in arriving to individuals housed at both facilities, and there is reason to believe that the cause for delay comes from the facilities themselves. For instance, one Federal Defender attorney mailed her client at the MDC plea-related documents on November 20 for a plea hearing scheduled for December 11. When the client had not received those documents by December 3, the attorney re-sent the same documents by priority mail. When the client still had not received those documents by December 7, the attorney re-sent the documents by overnight mail with a signature required. The client received all three mailings at the same time on the morning of the scheduled plea, which caused the judge to adjourn the matter since client had not had time to review the documents.

We will continue to provide information the government in hopes that they might take action to address delays in legal mail.

\* \* \*

Thank you for your continued attention to these important issues.

Respectfully submitted,

/s/ Sean Hecker
Sean Hecker

cc: Counsel of Record (by ECF)
Hon. Loretta Lynch, Paul, Weiss, Rifkind, Wharton & Garrison LLP (by e-mail)
Roberto Finzi, Paul, Weiss, Rifkind, Wharton & Garrison LLP (by e-mail)
Norhan Bassiouny, Paul, Weiss, Rifkind, Wharton & Garrison LLP (by e-mail)
Jeffrey Oestericher, U.S. Attorney's Office (S.D.N.Y.) (by e-mail)