**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 20, 2021

By ECF
Honorable Margo K. Brodie
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: *Federal Defenders of NY, Inc. v. Federal Bureau of Prisons, et al.*
      Civil Docket No. 19-cv-660 (Brodie, J.)(Kuo, M.J.)

Dear Judge Brodie:

  This Office represents Defendants Federal Bureau of Prisons ("BOP") and the Warden of the Metropolitan Detention Center ("MDC") in the above-referenced matter. We write pursuant to the Court's January 8, 2021 order requiring Defendants to provide a status report ahead of the January 22, 2021 conference in this matter addressing legal access for individuals housed at the MDC and the Metropolitan Correctional Center in New York, New York ("MCC").

  MDC and MCC continue to offer legal access by telephone and video-teleconference (VTC) every weekday, during the morning, afternoon, and evening. However, as discussed in detail below, in-person visiting is currently suspended at both institutions for various reasons.

  **A. In-Person Legal Visitation**

  MCC continues to offer in-person legal visiting seven days per week, by appointment. However, on Saturday, January 16, BOP issued an order locking down its institutions through the presidential inauguration for security reasons.[1] While this lockdown is pending, MCC has suspended in person legal visiting. We will update Plaintiff as to the anticipated re-opening date through the mediation process.

  Visiting at MDC has been suspended since December 11, 2020, as a result of a then-occurring COVID-19 outbreak on three of its units. The MDC has undertaken a re-testing plan to ensure that inmates who previously tested positive are re-tested, and each inmate subsequently receives a negative test result. While the outbreak was promptly addressed,[2] the facility is waiting

---

[1] We communicated with Plaintiff regarding its effect on legal visiting at MCC by 4:15 p.m. that same day.

[2] The outbreak remained isolated to a fraction of MDC's housing units, and no individuals at MDC have required hospitalization as a result of the outbreak. Throughout the

for a 10-day period without any inmate positive test results before it re-opens. The facility had anticipated reopening this week, but as a result of a small number of positive test results, the facility in an abundance of caution has pushed back its re-opening date. We will update Plaintiff as to the re-opening date through the mediation process.

When in-person visiting resumes, both facilities will take various steps to ensure the safety of visitors, including regular temperature and symptom screening of all visitors, the use of individual attorney rooms to ensure social distancing, and the use of masks throughout the facility. Moreover, upon the re-opening of both facilities, Defendants will facilitate testing by Plaintiff's air circulation expert of the conditions in both facilities' visiting rooms. This test will be conducted on February 1, 2021. Defendants previously provided Plaintiff with detailed air circulation test results in order to provide assurance regarding the HVAC systems at both institutions. Defendants are committed to working through the mediation process to provide additional reassurance regarding the air quality at the facilities.

Finally, as discussed during the January 8, 2021 status conference, the Wardens of both facilities continue to engage in enforcement efforts to ensure that both inmates and staff comply with the Wardens' orders to wear masks at all times in common areas. During the January 8 conference, Plaintiff indicated it may seek an order on this issue as a result of some dated reports of a limited number of staff not wearing masks at MDC and a handful of observations of staff not properly wearing masks at MCC. Defendants submitted that such an order would not be helpful or productive because, among other reasons, the Wardens are already implementing a robust enforcement program. The parties discussed this issue through the mediation process, and have agreed to address this issue through that process for the time being. Should Plaintiff ultimately choose to seek a court order on this issue, which, in Defendants' view, would be a request without any legal or factual basis, for, *e.g.*, an injunction ordering the Wardens to do that which they are already doing, the parties then would submit a proposed briefing schedule for the Court's consideration.

### B. Attorney Calls and VTCs

In light of the challenges posed by the ongoing pandemic, both facilities continue to offer a full schedule of telephone calls and VTCs on weekdays, in the morning, afternoon, and evening. In addition, both facilities continue to accommodate urgent legal access requests on a case-by-case basis.

#### 1. MDC is addressing an increase in call requests on certain units

Over the past week, there have been a three to four fold increase in legal call requests at MDC. Plaintiff has also noted that an increasing number of calls are not placed within 48 hours, owing in part to this increase in calls and in part to an increase in inmate movement throughout the facility. MDC has been working expeditiously to address this issue. Recently, it ordered, and last week received, equipment to install additional telephone lines on each of its floors. Prioritizing

---

ongoing pandemic, no individuals at MDC have required hospitalization, nor have any died, as a result of COVID-19.

the 5th and 6th floors of the institution, where the greatest number of call requests are currently pending, we have advised Plaintiff that, as of next week, each unit on the 6th floor will have its own telephone line that can be used to mitigate the call request list. As of the week of February 5, 2021, each unit on the 5th floor will have the same equipment. These telephone lines are *in addition to* existing capacity. The installation of one of these additional telephone lines on the 7th floor addressed overflow from heightened demand on that floor almost entirely, and we anticipate that additional lines will mitigate this issue similarly on the other floors. MDC will continue to install these additional lines on all units, and this new capacity ultimately will allow it to accommodate increased demand when needed.

### 2. Both facilities continue to promptly handle urgent call requests

As the parties have discussed during previous conferences, the facilities receive a number of urgent legal call requests on a daily and weekly basis, which are handled outside of the traditional legal call scheduling system. These requests are handled at all times, including over weekends, if needed. The parties have an established process of addressing these requests at odd hours, which relies on counsel e-mailing a number of individuals at each legal department and Seth Eichenholtz of the EDNY US Attorney's Office for MDC cases or Jeff Oestericher of the SDNY US Attorney's Office for MCC cases. With rare exception, this process has worked successfully, and both facilities have addressed numerous requests within 48 hours. Indeed, over the past two weeks, MDC has addressed 10 of these requests within 24 hours and MCC has addressed a number of these requests, as well. Should the request require a VTC or a longer than usual legal call, it sometimes takes additional time to respond to these requests, but in any event, a concerted effort is made to facilitate the call ahead of any deadline provided by the attorney.

### 3. MDC is increasing individuals' time out of their cells

Plaintiff has also raised the issue of inmates' time out of their cells and how it affects their ability to access their legal discovery. At MDC, part of its COVID mitigation efforts included limited time outside of its cells. The reason for these limits are to ensure that only a certain number of individuals are in the common area of each unit at any given time. More time spent out of cells results in more individuals out of their cells at once, which then creates heightened risk posed by inmates congregating in the common areas. Since the start of the recent outbreak, MDC is working to increase individuals' ability to spend time out of cells, which will allow for increased access to legal calls, as well. As of this writing, individuals in units not in quarantine or isolation status are allowed out of their cells for one hour per day. Individuals on quarantine units are permitted out of their cells for a half hour per day. Individuals in medical isolation with active COVID-19 infections are limited in their time out of their cells. We note, as always, that if an individual has a particularized need to access discovery in their underlying criminal case, MDC continues to make additional accommodations for those individuals on a case-by-case basis.

Defendants believe the mediation process continues to be helpful and we thank the Court for its consideration of this matter.

Respectfully submitted,

SETH D. DUCHARME
Acting United States Attorney

By:      /s/
Seth D. Eichenholtz
Sean P. Greene-Delgado
Matthew J. Modafferi
Assistant U.S. Attorneys
718-254-7036/6484/6229
seth.eichenholtz@usdoj.gov
sean.greene@usdoj.gov
matthew.modafferi@usdoj.gov

cc: Counsel of Record (By ECF)

Loretta E. Lynch
Roberto Finzi
Norhan Bassiouny
Paul, Weiss, Rifkind, Wharton & Garrison LLP


Jeffrey Oestericher
David Jones
Assistant U.S. Attorneys
U.S. Attorney's Office, S.D.N.Y.

4