**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 17, 2021

By ECF
The Honorable Margo K. Brodie
Chief United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:   *Federal Defenders of NY, Inc. v. Federal Bureau of Prisons, et al.*
>        Civil Docket No. 19-cv-660 (Brodie, Ch. J.)(Kuo, M.J.)

Dear Chief Judge Brodie:

This Office represents Defendants Federal Bureau of Prisons ("BOP") and the Warden of the Metropolitan Detention Center ("MDC") in the above-referenced matter. We write pursuant to the Court's February 5, 2021 order requiring Defendants to provide a status report ahead of the February 19, 2021 conference in this matter addressing legal access for individuals housed at the MDC and the Metropolitan Correctional Center in New York, New York ("MCC").

MDC and MCC continue to offer legal access by telephone and video-teleconference (VTC) every weekday, during the morning, afternoon, and evening. Also, both MCC and MDC offer in-person legal visiting on weekdays and certain weekend days.

**A.  In-Person Legal Visitation**

On February 16, 2021, MDC resumed in-person legal visits at the institution six days per week (except Sunday), by appointment. MCC continues to offer in-person legal visiting seven days per week, by appointment.

Currently, attorneys seeking legal visits can obtain appointments at each institution by e-mailing each institution's legal department. We anticipate that by February 26, Defendants will have an online scheduling system in place for in-person legal visit appointments at MCC. We anticipate that by March 12, Defendants will have the online scheduling system in place for in-person legal visit appointments at MDC.

Both facilities continue to take various steps to ensure the safety of visitors, including regular temperature and symptom screening of all visitors, the use of individual attorney rooms to ensure social distancing, and the use of masks throughout the facility. The parties continue to work cooperatively on these issues. On Thursday, February 11, Plaintiffs' air circulation expert

visited both the MCC and MDC to conduct air circulation tests in both facilities' visiting spaces.[1] The visit was productive, with facility staff and Plaintiff's expert collaborating on the ideal set up for the visiting spaces. On Tuesday, February 16, Plaintiff provided a report to Defendants regarding these visits, and Defendants are currently reviewing the report. Through mediation, the parties anticipate discussing ways to implement the recommendations contained in the report.

We are also pleased to report that over the past six weeks, with one exception,[2] there have been no reports of staff members failing to wear their masks at either facility. We continue to observe consistent compliance with the mask order at both facilities. During last week's inspection of both facilities, all staff members present for the inspections were wearing masks at all times while indoors.

### B. Attorney Calls and VTCs

In light of the challenges posed by the ongoing pandemic, both facilities continue to offer a full schedule of telephone calls and VTCs on weekdays, in the morning, afternoon, and evening. In addition, both facilities continue to accommodate urgent legal access requests on a case-by-case basis. By April, we hope to expand the online scheduling system to include call and VTC legal access. Should we successfully implement the online scheduling system for all methods of legal access, Defendants will be able to relieve Plaintiff of its obligation of scheduling remote visitation.

### 1. MDC Has Virtually Eliminated Any Telephone Call Backlog

MDC has substantially reduced a backlog of telephone calls. Further, it can accommodate incoming call requests so that a new backlog does not develop.[3] In the short term, should we see a backlog develop, MDC is committed to using staff (including authorizing overtime, if needed) to place these calls and mitigate any backlog.

Although the MDC has mostly eliminated any call backlog through the parties' efforts, and expects to be able to manage additional requests without developing a significant backlog, MDC remains committed to installing new telephone lines on each housing unit. As discussed in detail in the Friday, February 12 letter to the Court, the MDC's project of installing additional telephone lines is ongoing, owing to severely limited facilities staff at the institution. The Warden has advised that he is waiting for approval for two TDY staff with the certification to run the telecommunication wiring needed to install the phones. While the Warden has not yet provided

---

[1] Due to institutional concerns, the parties were unable to conduct the air circulation test in visiting spaces in MCC's 10-South unit, nor in MDC's SHU unit. We will work through the mediation process to discuss next steps regarding these visiting spaces.

[2] Yesterday, Federal Defenders provided a report of one MDC staff member failing to wear a mask, and we have forwarded it to the Warden for further action.

[3] For example, tomorrow there are only 17 calls scheduled for the 50 daily call slots created by the installation of the five telephones installed on individual units.

an expected date for completion of the project, he is committed to accomplishing it as quickly as possible and will keep the mediator informed regarding the progress of the project.

## 2.  MDC is Working to Address the Need for Increased VTC Capacity

The parties agree that VTC access is the biggest area where demand outpaces capacity. As discussed in the last letter, MDC plans to address this need with both short-term and long-term solutions.  As to the short-term solution, MDC is working to provide increased VTC access for legal calls with their currently installed VTC equipment. Right now, MDC schedules four, half-hour VTC calls each day, institution-wide.  The proposal to expand capacity will allow for two VTCs each day *per floor*, for an increase of as many as 10 additional attorney VTC calls per day. We expect this increased capacity, along with the re-opening of the facility to visitors, will address the current VTC demand.

As a long-term solution, MDC continues to work to acquire at least 15 additional VTC units.  When these units arrive, MDC staff will install them in attorney visit spaces. Doing so will allow the facility more flexibility in scheduling VTCs. These additional units will significantly increase capacity both for attorney client access and VTC court appearances. The currently existing VTC capacity will remain, and used only to manage any surge in requests. We will update the mediator with a timeframe for obtaining these units.

We continue to work with Plaintiff on these issues, and update it on Defendants' efforts, through the mediation process.

## 3.  Access for Individuals in Quarantine and Isolation Units

Currently, at MDC, individuals in quarantine and isolation units are not able to access VTC because these units are located outside of their housing units.  Instead, the individuals on these units can only have telephone court appearances and legal access. Limiting contact with inmates on quarantine and isolation units is a key aspect of MDC's COVID-mitigation plan. When an inmate is brought out of their assigned housing unit to the office containing VTC units, the inmate comes in contact with a number of staff members and fellow inmates (orderlies, inmates moving through the institution, etc.). Because, among other challenges, it is difficult to stop inmates from interacting with fellow inmates during these times despite staff's best efforts, the facility has strictly enforced the rule that quarantined inmates must remain in their quarantine unit.

MDC's inability to provide VTCs to inmates on quarantine status creates a number of logistical challenges, including that court conferences and legal calls that need to be converted from VTC calls to telephone calls when an inmate's unit status changes.  We are working to address these issues with short and long-term solutions.   In the short term, improved communication can help mitigate these changes. To that end, we will implement a system to provide as prompt notice as possible when a court conference has to be changed from a VTC to a telephone call.  In the long term, MDC is exploring the logistics involved with wiring a room on each housing unit for VTC access, although there are some potential security challenges involved with this solution.  Further, we expect that the arrival of additional VTC units will help mitigate this issue, creating the possibility of, among other things, a dedicated quarantine VTC space.

However, for the time being, the simplest mitigation solution remains converting VTCs to telephone calls on the quarantine and isolation units when feasible.

We thank the Court for its consideration of these matters.

Respectfully submitted,

SETH D. DuCHARME
Acting United States Attorney

By: _____/s/_____

Seth D. Eichenholtz
Sean P. Greene-Delgado
Matthew J. Modafferi
Assistant U.S. Attorneys
718-254-7036/6484/6229
seth.eichenholtz@usdoj.gov
sean.greene@usdoj.gov
matthew.modafferi@usdoj.gov

cc:   Counsel of Record (By ECF)

Loretta E. Lynch
Roberto Finzi
Norhan Bassiouny
Paul, Weiss, Rifkind, Wharton & Garrison LLP

Jeffrey Oestericher
David Jones
Assistant U.S. Attorneys
U.S. Attorney's Office, S.D.N.Y.