**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 1, 2021

By ECF
The Honorable Margo K. Brodie
Chief United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *Federal Defenders of NY, Inc. v. Federal Bureau of Prisons, et al.*
            Civil Docket No. 19-cv-660 (Brodie, Ch. J.)(Kuo, M.J.)

Dear Chief Judge Brodie:

       This Office represents Defendants Federal Bureau of Prisons ("BOP") and the Warden of the Metropolitan Detention Center ("MDC") in the above-referenced matter. We write pursuant to the Court's August 29, 2021 Order requiring Defendants to provide a status report ahead of the September 3, 2021 conference in this matter addressing legal access for individuals housed at the MDC and the Metropolitan Correctional Center in New York, New York ("MCC").

### A. The Proposed Closure of the MCC

       The day before the August 27 status conference in this matter, the Department of Justice announced a plan to temporarily close the MCC. It is expected that MCC's temporary closure will result in moving a significant portion of the individuals housed at MCC to the MDC. While the transfer of these inmates to the MDC will leave the facility still under its capacity,[1] the parties agree that the move may create logistical issues that can be mitigated through discussion and planning. To that end, the parties have committed to discussing plans regarding this move during the mediation process.

       As discussed during the August 27 conference, and as set forth in the August 29 Minute Entry in this matter, "[t]he Court directed Defendants to determine whether the Bureau of Prisons has a written plan to address these concerns and, if so, to share it with the Mediator so that the parties can discuss it within the mediation context." Upon information and belief, there will likely not be a single written document issued by BOP encompassing all of the decisions involved in the process of moving inmates from MCC to MDC. Indeed, the details of the closure, including a timeline for any transfer of inmates, remain under discussion. Nonetheless, Defendants have

---

[1] MDC has a maximum capacity of approximately 2,400 inmates. As of the writing of this letter, there are approximately 1,650 inmates housed at MDC. There are approximately 240 inmates currently housed at MCC, not all of whom will be transferred to the MDC.

discussed this issue in detail with the mediator and have committed to provide her with both updates and information regarding the transfer, as well as any written decisional documents pertaining to the timeline of any transfer.

Further, during the conference, the Court set forth its expectation that "all such concerns [regarding the relocation from MCC to MDC] must be addressed prior to the transfer of inmates." *See* August 29 Minute Entry.[2]  Defendants agree with the Court that these issues should be discussed prior to the closure of MCC; that discussion began this week, and Defendants are committed to continuing that discussion through mediation.  Defendants also intend to update the Court on the relevant details through this and future status letters.

### B. Concerns Regarding Telephone and Video-teleconferencing (VTC) Access with Increased Population

MDC has proactively worked to increase its telephone and VTC infrastructure ahead of the transfer of any additional inmates.  We are pleased to report that wiring for increased telephone and VTC access is not only underway, but nearing completion.  Once completed, every housing unit on both the East and West side of MDC will have at least one VTC installed on the unit in a space appropriate for attorney-client communications.  The work on the West side of MDC involves installing an additional VTC unit on each housing unit.  In sum, by the time of the anticipated inmate transfer from MCC, MDC will be in a position to have VTC access on each unit and continue to provide VTC access even when a unit is placed in quarantine status.

Federal Defenders raised a concern in mediation this week that the dedicated Federal Defenders telephones may not have been recently tested on currently empty housing units.  MDC has committed that *prior to* opening any new housing units it will ensure that there are working telephones and a VTC unit, and that it will test the designated Federal Defenders telephones.

### C. Issues Pertaining to Discovery Computers

Federal Defenders has raised an additional concern about functioning discovery computers on each unit.  It has noted that this is particularly important in light of the limited time inmates are permitted out of the unit or to go to the law library as a result of necessary COVID-mitigation measures.  MDC has committed to ensure that, as with all current units, any new unit has at least two functioning discovery computers.

---

[2] Defendants understand this portion of the Minute Entry as reiterating the Court's expectation and that the Minute Entry is not a formal injunction prohibiting Defendants from transferring any inmates from MCC to MDC.  Indeed, specific inmates may need to be transferred from various BOP facilities, including MCC, to MDC for myriad reasons that have nothing to do with the MCC-MDC transfer. If Defendants' understanding is incorrect and the Court intended the minute entry to enjoin any inmate movement from MCC to MDC, Defendants request that the Court stay the order pending an opportunity for Defendants to be heard on the factual and legal issues.

### D. Staffing Issues

While specific plans are still under discussion, we will continue to update the mediator on plans for increased staffing at the MDC in light of the anticipated transfer of inmates into the institution. We will also discuss these issues with Plaintiff in the context of mediation as it pertains to legal access issues.

### E. Other Issues Pertaining to In-Person and Remote Legal Visitation

1. In-Person Visiting

Both MDC and MCC continue to take various steps to ensure the safety of visitors,[3] including regular temperature and symptom screening of all visitors, the use of individual attorney rooms to ensure social distancing, and the use of masks throughout the facility.[4] In-person legal visitation is currently available at both facilities, by appointment and on a walk-in basis, seven days a week.

1. Attorney Calls

Both MDC and MCC continue to offer remote legal access by telephone and video-teleconference (VTC) every weekday, during the morning and afternoon. With extremely limited exception, both facilities are able to provide all requested legal calls within 48 hours and have not experienced an overflow of call requests. The facilities are aware of a potential for an increased volume of call requests in September, and will continue to monitor the volume of requests and discuss any associated issues in mediation. However, the facilities anticipate having the staff and infrastructure to accommodate this predicted increase in call requests.

2. VTCs

As discussed above and in our prior reports, MDC continues to work on the expansion of VTC access. This week, the parties discussed during mediation how best to ensure VTC access for inmates housed in the East building in the event that a quarantine is imposed in the future, as well as the possibility of installing a new VTC unit in the East building's SHU. At the same time, both facilities have neared a point where they are able to provide requested attorney-client VTCs within 48 hours of the request. Similar to telephone calls, we expect to be able to accommodate

---

[3] In order to help alleviate inmate-attorney concerns about the safety of in-person visitation and the availability of vaccines, the facilities have communicated to Plaintiff (and separately to all inmates) a variety of ways by which inmates at both facilities can request vaccines, *i.e.*, by electronic and in-person means. Both the Pfizer and Johnson & Johnson vaccines are currently available at the institutions upon request.

[4] Since our last report, Defendants have not received any complaints regarding masks at either institution. The Warden of MDC has reiterated his commitment to enforce mask use among staff and MDC commits to provide masks in the visiting room in case they are needed by inmates attending legal visits.

3

an increase in requests for remote access in September with the existing infrastructure and staffing. We also note that the VTC system is intended for attorneys who cannot otherwise visit their clients in-person, and encourage attorneys to continue to visit in-person as the primary method of legal visitation whenever possible.

Currently, the East SHU does not have its own VTC unit. The primary reason for this is the layout of the East SHU does not provide for an obvious location for such a unit that assures required safety and privacy protections. MDC has committed to installing a VTC unit accessible to inmates in the East SHU (even those in quarantine status) as soon as possible. We expect to have a date certain for completion of this project (if it is not already completed) by Friday's conference.

Defendants continue to work productively with Plaintiff and the mediation team and we thank the Court for its consideration of this matter.

>Respectfully submitted,
>
>JACQUELYN M. KASULIS
>Acting United States Attorney
>
>By:  /s/
>Seth D. Eichenholtz
>Sean P. Greene-Delgado
>Matthew J. Modafferi
>Assistant U.S. Attorneys
>718-254-7036/6484/6229
>seth.eichenholtz@usdoj.gov
>sean.greene@usdoj.gov
>matthew.modafferi@usdoj.gov

cc: Counsel of Record (By ECF)

Loretta E. Lynch
Roberto Finzi
Norhan Bassiouny
Paul, Weiss, Rifkind, Wharton & Garrison LLP

Jeffrey Oestericher
Assistant U.S. Attorney
U.S. Attorney's Office, S.D.N.Y.