UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

FEDERAL DEFENDERS OF NEW YORK, INC., on behalf of itself and its clients detained at the Metropolitan Detention Center - Brooklyn,

Plaintiff,

-against-

FEDERAL BUREAU OF PRISONS and WARDEN QUAY, in his official capacity,

Defendants.

- - - - - - - - - - - - - - - - X

19-CV-660 (MKB)

United States Courthouse
Brooklyn, New York

August 11, 2023
10:00 a.m.

TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE STATUS CONFERENCE
BEFORE THE HONORABLE MARGO K. BRODIE
UNITED STATES CHIEF DISTRICT JUDGE

HONORABLE PEGGY KUO
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

A P P E A R A N C E S:

For the Plaintiff: (via telephone)
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
BY: JENNA DABBS, ESQ.
SEAN HECKER, ESQ.
MATTHEW CRAIG, ESQ.

For the Defendant: (via telephone)
BREON PEACE, ESQ.
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201
BY: SHANA PRIORE, ESQ.
DAVID COOPER, ESQ.
Assistant United States Attorneys

(Via telephone) PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
BY: LORETTA LYNCH, ESQ., Mediator
CHARLIE FIGUEROA, ESQ., Mediator

Court Reporter: KRISTI CRUZ, RMR, RPR
Official Court Reporter
225 Cadman Plaza East / Brooklyn, NY 11201
Email: kristi.edny@gmail.com

Proceedings recorded by computerized stenography. Transcript produced by Computer-Aided Transcription.

* * * * *

THE COURT: Good morning, everyone.

Winnie, please call the case.

THE COURTROOM DEPUTY: Civil Cause For Status Conference, docket number 19-CV-0660, Federal Defenders of New York, Inc. v. Federal Bureau of Prisons, et al.

Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued meter credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court.

Counsel, starting with plaintiff, state your name for the record.

MS. DABBS: Good morning, Your Honor.

This is Jenna Dabbs for plaintiff Federal Defenders.

On the line with me are my colleagues Sean Hecker and Matt Craig, as well as David Patton and Deirdre von Dornum from Federal Defenders.

THE COURT: Thank you. Good morning.

MS. PRIORE: Good morning, Your Honor.

This is Shana Priore from the U.S. Attorney's Office.

Here today with me is my colleague David Cooper, who just has entered his appearance in this case this morning. And also Neha Khan and Irene Chen from MDC, as well as A.W. Rodriguez.

THE COURT: Thank you to all of you.

Ms. Lynch?

MS. LYNCH: Good morning, Your Honor, and the parties.

Loretta Lynch from the firm of Paul Weiss, along with my associate Mr. Charlie Figueroa.

THE COURT: Thank.

And Judge Kuo?

JUDGE KUO: Yes, good morning, everyone.

This is Judge Kuo.

THE COURT: Good morning.

We'll start with you, Ms. Lynch, for a quick report.

MS. LYNCH: Thank you, Your Honor.

I continue to work with the parties on three main fronts. First, troubleshooting their technical issues and day-to-day concerns. This has been greatly aided because the plaintiffs have been incredibly helpful in providing updates on things like funds and videoconferences not working. This allows the institution to put in work orders more quickly, but also alerting their parties and the mediation team of incidents that occur in the institution that may be reflective of larger issues.

So we work on the front of troubleshooting these technical issues and day-to-day concerns.

The second main area we were working on is continuing to look at the overarching procedures that have been put in place through the mediation process to ensure access and determining where those procedures need to be tweaked. We've noted communications issues within the institution.

And then the third main area that I continue to work on with the parties is their ongoing discussions regarding settlement. As I've already discussed regarding

the first issue, again, the real-time reporting of technical issues and concerns about calls has really allowed the mediation team to have greater insight into how processes are working. It's also enabled the institution to work on repairing things much more quickly.

When it comes to our overarching procedures, again, we continue to look at those, and oftentimes the specific incidents are very illuminating. For example, we have spent some time over the past few weeks, and one of the concerns that arose, an attorney whose attire was questioned as she came to enter the institution. Now, the attorney was allowed to enter and the client visit proceeded. However, the process that the attorney went through was viewed, I think, by all who reviewed it as not something that essentially was comporting with the professional standards that should have been met.

And so through discussion, the institution has outlined some changes and clarifications as to how attire will be dealt with if any concerns are raised through the course for male and female counsel. But of course, sometimes there are unique concerns regarding female attorneys and questions about attire, and it can be dealt with in as professional a manner as policy. And even though there had been already been a policy discussion about that, this incident allowed both parties to talk through ways to

improve that particular review.

It's also allowed the institution to do a deep-dive on specific training that is often needed to ensure better communication of the procedures and policies that are agreed upon in this process that are implemented by the institution's management, but sometimes fail to trickle down to those who are implementing the policies. And so this has allowed the institution to see those break points and work on things like training, including sensitivity training, as well as specific training about the legal access process overall.

Also, it's led to the institution compiling a collection of guidance for the visiting room so that anyone, any officer who may be assigned to desk will have these procedures at their fingertips to turn to, as opposed to counsel having to rely upon the relative experience or inexperience of a particular officer. So we've continued to work on that issue.

The parties have also been discussing settlement. They're continuing those discussions, and I will continue to monitor those as they essentially work on the issues there.

We also review ongoing issues that have come up in the past. There's been discussion earlier this spring of counsel who had been often in particularly secure areas, Unit 84 for one and SHU another, having had their visits

concluded successfully, but then not being able to leave those units.

With regard to Unit 84, the institution did implement a telephone system so that counsel are able to call when they are done with a visit and be allowed to leave safely and securely.

Within SHU, the institution had been exploring a phone system, and I'm advised that they will be instituting an intercom system in the SHU so that after the visit's concluded, counsel can notify an officer that they're ready to depart and they, again, can be escorted out safely and securely.

The need for this was highlighted this week because even though things have been working very smoothly up until this point, this week we did learn that just a few days ago one particular counsel had a SHU visit with a client, and although that visit went well, the attorney was then stuck in SHU for over 30 minutes unable to leave, despite repeatedly calling out, making noise, literally banging on the walls and doors to get the attention of an officer. So this is something that we've been trying to avoid, obviously. The institution has advised that they're going to review the specific incident. However, I will be --

(Technological difficulty.)

THE COURT: Ms. Lynch, we lost you there for a minute. After you explained what happened with the attorney and you started to explain what the institution is going to do, we lost you.

MS. LYNCH: Okay. I'm sorry. Are you able to hear me now?

THE COURT: We can.

MS. LYNCH: Okay. Thank you. I apologize for that glitch.

The attorney was stuck in the SHU for over 30 minutes this week, and despite several attempts to gain attention of the officers to depart, wasn't able to get out until an officer came back and let him out, again, over 30 minutes after the visit had concluded.

The institution has advised that they will be reviewing this incident to determine what happened, speaking with the officers, etcetera.

And with respect to the SHU, this is the area in which an intercom system is going to be installed so that counsel can call someone, as they do on Unit 84, to ensure timely departure. My understanding is the intercom system has been ordered, and so I will be in touch with the institution to keep on top of the timing of the installation, and also measure to make sure that this incident does that recur until that intercom system is

installed, and also to make sure, of course, even that after the installation of the system that it is still operable and does not recur again, because this is just not a situation that we want to see recur.

So I thank all the parties for continuing to work very hard, as I've noted before, working in real-time to raise issue to the mediation team's attention and with each other. The parties will often speak offline and discuss issues and resolve issues, which is very helpful, as well.

But thank you for the opportunity to make this report.

THE COURT: Thank you, Ms. Lynch.

I'll see if Ms. Dabbs has anything to add.

MS. DABBS: Thank, Your Honor. This is Jenna Dabbs for plaintiff.

We continue to discuss ongoing issues in mediation. As the Court can see from the status reports this week, there continue to be some of the same ongoing issues and also some new ones; or perhaps more accurately, some repeat issues that had been addressed in our prior discussions, including with prior policy or procedure changes and internal guidance that have cropped back up again in more recent times.

Effective internal communications and training remain ongoing issues, and staffing, of course, remains a

serious issue at MDC, sufficiently so that it has recently necessitated some changes to agreed-upon protocols. But the institution has said those will be temporary and we, of course, hope that will be the case, and we will continue to productively discuss those topics in the mediation process as they arise.

In their status report this week, defendants have emphasized what they report as a lack of progress on the settlement front. We're eager to settle this case as well. In addition to our ongoing discussions regarding various issues impacting legal access, in separate discussions with the mediation team recently we have focused on settlement, and we anticipate moving forward with joint discussions regarding settlement in the very near term.

I appreciate that the defendants are anxious to move forward in the timeline. The reality is that the recent fact-sliding we've seen on a number of fronts where we had reached agreement and thought effective policies and procedures were in place has really caused us to approach certain aspects of the settlement through that lens, with a focus on the potential for future issues and how to ensure that the progress that's been made during the life of this case is secured or is actually lasting, especially in light of the problem of very frequent changes in leadership at the MDC.

The parties have gone back and forth on a draft settlement agreement over a period of two years now and we, on plaintiff's side, have been working diligently on the current draft.

In any event, Judge, we anticipate that we will return proposed revisions to that draft agreement and be in a position to move forward with joint settlement discussions in the very near term.

THE COURT: Thank you, Ms. Dabbs.

I believe Ms. Priore, are you representing the Government today?

MS. PRIORE: Yes, Your Honor. I'll be speaking briefly on behalf of the Government.

Just to address a few points raised by Ms. Lynch and Ms. Dabbs, with regard to the attorney who was stuck in the SHU the other day, the MDC attorneys did look into this incident, and our understanding is that there were two almost simultaneous body alarms on the 6th floor at the same time as this call was going on. And so our understanding is that this is one of the reasons why the officer that was supposed to be assigned to that area was not available to let the attorney out. We are going to do a little additional digging just to confirm that.

However, as Ms. Lynch did mention, we have ordered the parts for an intercom system in the hopes that if this

incident does arise in the future, that the attorney can get through to somebody that hopefully would not be involved in the body alarm if something like that did happen again.

As far as issues with policies being communicated, we have confirmed that guidance is going out every Friday to officers in the VR and the front lobby.

We've also reached a point with retraining some of these officers in these areas where if there's any question regarding admissibility of a visitor, that the officers know that they are not the ones to make the final call. They are ultimately consulting with the Institutional Duty Officer or MDC Legal itself before making that call.

As far as staffing issues, MDC has obtained funding for additional staffing. In fact, we do have five new officers beginning this Monday. They will be undergoing additional training.

As far as the settlement agreement, we look forward to receiving a counterproposal from the plaintiff. We appreciate their diligent efforts in getting something to us. We do understand that things do change over time, and I think one of our concerns as a defense team is that as time moves on and things change a little bit, you know, in some ways the institution is almost like a living, breathing entity, things change from time to time, that there is kind of a moving of the goal posts and that we can't really move

forward until we at least get a counterproposal back. But we understand that the plaintiffs are working on that, and we appreciate them working towards that.

THE COURT: Thank you, Ms. Priore. I appreciate the report.

The one thing that is of concern is the fact that because the one officer who was covering SHU was involved in another incident, that there was no way for a backup or for someone else to assist. Hopefully the intercom will address that issue.

But it seems to me that regardless of what else is going on in the institution, there has to be a way for an attorney who is trying to leave SHU to be able to do that.

MS. KHAN: Can I speak? This is Neha Khan from MDC Brooklyn.

THE COURT: Ms. Khan, go ahead.

MS. KHAN: So when there's a body alarm, all staff is required to report to that body alarm. The only people who do not go to the body alarm is Control Center. So that's what the intercom system would do, it would be able to be a buzz-in system to the Control Center so that they know. However, in SHU, everything is manually locked as well as controlled by Control. So unfortunately, this 30-minute delay, there was really nothing that anyone could have done to get this attorney out any sooner.

THE COURT: Thank you for that. And what you've done is emphasized the need to have that intercom installed so that it doesn't happen again, because no attorney should be stuck in SHU for any period of time, but certainly not for 30 minutes without any communication. At least if, as you indicated, there was a way for Control Center to hear the request, I assume some way they could have communicated to the attorney what was going on and the need for delay. But to not be able to contact someone while you're in SHU is problematic.

I thank the parties for continuing to work with the mediator on all of the ongoing issues and for continuing to work with each other. I encourage you to continue to do that and to find a way to resolve the issue.

I appreciate the concerns raised by the Federal Defenders with regard to the fact that many of the policies that the parties have agreed to throughout the litigation aren't being implemented for a number of reasons, one of which is staffing. And I'm happy to hear that MDC has received additional staffing, and I believe you are expecting to receive even more officers, because I wouldn't want to study the lawsuit either if the policies that are being agreed to are not being enforced.

So on the defendant's side, to get plaintiff to agree to a resolution, they have to see that the progress

that has been made is being implemented continuously. Yes, things happen, emergencies happen, but there has to be a way to ensure that the MDC functions the way it needs to so that even when there is an emergency, there is access to counsel.

I am going to adjourn this matter to September 15th, at 10 a.m. The parties should submit a report by the Wednesday before that Friday.

Is there anything else we need to discuss today?

MS. DABBS: Nothing further for the plaintiff, Your Honor.

Thank you.

MS. PRIORE: Nothing further from defendants, Your Honor.

Thank you.

THE COURT: Thank you all. Have a great day and a great weekend.

(Matter adjourned.)

* * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ Kristi Cruz

Kristi Cruz