UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

| | |
|---|---|
| FEDERAL DEFENDERS OF NEW YORK, INC., on behalf of itself and its clients detained at the Metropolitan Detention Center - Brooklyn, | 19-CV-660 (MKB) |
| Plaintiff, | United States Courthouse Brooklyn, New York |
| -against- | September 15, 2023 10:00 a.m. |
| FEDERAL BUREAU OF PRISONS and WARDEN QUAY, in his official capacity, | |
| Defendants. | |

- - - - - - - - - - - - - - - X

TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE STATUS CONFERENCE
BEFORE THE HONORABLE MARGO K. BRODIE
UNITED STATES CHIEF DISTRICT JUDGE

A P P E A R A N C E S:

For the Plaintiff: (via telephone)
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
BY: SEAN HECKER, ESQ.
MAHRAH TAUFIQUE, ESQ.

For the Defendant: (via telephone)
BREON PEACE, ESQ.
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201
BY: DARA OLDS, ESQ.
DAVID COOPER, ESQ.
Assistant United States Attorneys

Mediators: PAUL, WEISS, RIFKIND, WHARTON &
(Via telephone) GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
BY: LORETTA LYNCH, ESQ., Mediator
CHARLIE FIGUEROA, ESQ., Mediator

Also Present: DEIRDRE von DORNUM, ESQ. - Fed Defenders
(Via telephone) DAVID PATTON, ESQ. - Fed Defenders
NEHA KHAN - Bureau of Prisons
IRENE CHAN - Bureau of Prisons

Court Reporter: KRISTI CRUZ, RMR, CRR, RPR
Official Court Reporter
225 Cadman Plaza East / Brooklyn, NY 11201
Email: kristi.edny@gmail.com

Proceedings recorded by computerized stenography. Transcript produced by Computer-Aided Transcription.

* * * * *

THE COURTROOM DEPUTY: Civil Cause For Telephone Conference, docket number 19-CV 660, Federal Defenders of New York versus Federal Bureau of Prisons, et al.

Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issue meter credentials, restricted entry to future hearing, denial of entry to future hearings, or any other sanctions deemed

necessary by the Court.

Counsel, starting with plaintiff, please state your name for the record.

MR. HECKER: Good morning. Sean Hecker, Kaplan Hecker & Fink, for plaintiffs.

I'm joined by my colleague Mahrah Taufique, as well as our clients Deirdre von Dornum and David Patton.

THE COURT: Thank you. Good morning.

Can the defendants state your appearance?

MS. OLDS: Good morning, Your Honor.

This is Assistant U.S. Attorney Dara Olds on behalf of defendants.

I'm joined by my colleague, AUSA David Cooper.

Also on the line are counsel for BOP, Neha Khan and Irene Chan.

THE COURT: Thank you. Good morning.

Ms. Lynch?

MS. LYNCH: Good morning, Your Honor, and the parties.

For the mediation team, Loretta Lynch from the firm of Paul, Weiss, along with my associate, Mr. Charlie Figueroa.

THE COURT: Thank you.

I know Judge Kuo is not with us today.

I'll start with you, Ms. Lynch, for a quick

report.

MS. LYNCH: Thank you, Your Honor.

The parties have continued positive and substantive discussions. They're in mediation.

The focus has been on effecting the status of remote access, the calls and videoconferences, and also in-person access. All three modes of access have been maintained and are working, and attorneys are utilizing them.

We are focusing on, again, looking at the logistical issues that do crop up within those different modes of access and assessing whether or not there's a process or procedure that we need to tweak or modify to deal with these issues, or is there a way to make sure that information is conveyed to the institution in a timely enough manner so that issues can be dealt with.

The focuses on in-person issues has been discussed in all of the reports the Court has seen this week being discussed in mediation. We have seen some wait times begin to creep up for some counsel, sometimes at the front desk, more often waiting for clients to be brought down for visits. Again, we've seen some challenges with the east side wing, with counsel needing to go there, but being diverted back to the west side because staff are not available on the east side either because of an

understaffing issue or, for example --

(Technological difficulties.)

MS. LYNCH: As I was saying, we've seen issues on the in-person visiting that relate to, for example, some increased wait times, some at the front desk, more often counsel waiting for clients to be brought down for their visit due to staffing concerns on the units. We've seen some challenges on the east side, with the east side visiting room staffing being challenging due to either staff absences or understaffing in general.

We also have been discussing the re-implementation of certain security measures in SHU that have led to clients being handcuffed again. Their security measures have been modified for some time and people were not handcuffed in the contact visiting rooms. That security measure's been reinstated. The institution is discussing that issue, and we are awaiting a report on that.

So those are some of the issues that are being discussed in mediation regarding in-person visiting.

With respect to the SHU itself, we continue to discuss not just the security issues as noted, but some of the challenges the SHU has been facing. For example, when counsel need to leave at the end of a visit, there was no way for them to reach out to staff and notify them that a visit had concluded, and we had seen instances of counsel

being stuck in SHU either during a security incident or for other reasons and not being able to leave for a significant period of time.

The institution has reported that they have set up intercoms in the SHU visiting rooms, both the noncontact rooms and the contact rooms, similar to the phone systems that were set up in Unit 84. So if there is a delay, when counsel reach out to leave and they do not get a response, they can reach out the intercom, be connected to the control center, and receive an update as to whether or not, for example, there's a security issue that prevents movement at the time, or control can notify staff to go ahead and let the counsel depart.

So that's been very helpful. Those discussions will continue.

In mediation, we're also discussing some technical issues that arise. As we've been discussing, the plaintiffs have been helpful in providing realtime instances where phones or VPCs are either not operational or are having issues, for example, with volume or clarity. This allows the institution to constantly look into those issues, and with that notice, can put those particular phones or VPCs on the list for review, has led to sometimes replacement of instruments or repair of phone lines, and that's been very helpful.

The parties also have exchanged settlement documents, and I look forward to those discussions being able to begin soon.

So I will continue discussing all of these issues with the parties.

I will also note that on our call, we have been joined not just by MDC legal staff, but by operational and, at times, executive staff, and this has been very helpful in being able to drill down on the reasons for some of the concerns that have been raised, resolve some factual questions about why some of the procedures may have shifted, and that's been a very helpful development from the institution side. So I look forward to continuing to have those discussions with the parties.

And I thank you for the opportunity to make this report.

THE COURT: Thank you, Ms. Lynch.

I'll hear from you, Mr. Hecker.

MR. HECKER: Thank you, Judge.

As I think may be apparent from Ms. Lynch's report and from our letter, we have been addressing a range of issues in mediation. There's obviously been some turnover on the MDC and U.S. Attorney side of mediation, and I confess that on the plaintiff's side, there's a little bit of a feeling of one step forward, two steps back. So issues

that I think we thought were settled are being reconsidered, which can be a little unsettling, and I'm sure the Court appreciates, a little bit frustrating.

It is true that there have been significant staffing issues which persist, but it's also true that on issues where we thought we'd made progress, including handcuffing of clients in SHU, making it difficult to review discovery with counsel, you know, we're now reconsidering issues that we thought had been put to bed, which can be a little tough on our end.

I think, Deirdre, you had one or two other issues you wanted to add?

MS. von DORNUM: Yes, good morning. This is Deirdre von Dornum.

I think we also just wanted to flag, and I know it's hard when there's all new people on the defendant's side, both internal counsel and external counsel, but one thing we've noticed is there doesn't seem to have been carryover of institutional knowledge, including questions being raised about why we're reporting on issues with calls and why we're reporting on technical issues.

Similarly, there's a changeover of staff, both in the lobby of the visiting room, which of course happens every quarter, but we're, once again, confronting the age-old issues of women's clothing, can women wear small

gold earrings or must their earrings be removed. The other day I was forced to take my dress of, which I thought was red, they thought was orange.

So back to the same issues that can be resolved, but add an hour or two hours to a visit.

So if there's anything the Court and the people on the call, who I know are trying hard, can do to make sure that all those things we worked out with Ms. Papapetrou and Mr. Green can carry over. You know, it's hard, when we're talking about settlement, to agree to a settlement if you can't be sure that what we've agreed on will stay in place.

THE COURT: Where are the parties with the Legal Access Guide that was being worked on? I thought a lot of these issues were going to be addressed in that.

MS. von DORNUM: Yes, Your Honor, that was our hope. We have not seen a draft of that or heard status on that.

THE COURT: Okay.

I'm sorry, who is trying to speak?

MS. OLDS: I'm sorry, Your Honor. This is Dara Olds from the defense, for defendant.

I just wanted to answer Your Honor's question. I wanted to make sure I could hear clearly.

THE COURT: Sure.

I asked about the Legal Access Guide that the

parties should be working on where most, if not all of the agreements reached should be memorialized.

Can you speak to that and also give your status report?

MS. OLDS: Thank you, Your Honor.

I do believe that internally, BOP is working on the Legal Access Guide. I don't have a more specific update on that. That is something that is being worked on, and we will continue our discussions as to sort of how to frame that with both the plaintiffs and in the mediation sessions.

With respect to our status report, I think that the discussions between the parties have been helpful. As Ms. Lynch, our mediator, indicated, to be given information in realtime or as close to realtime as possible, especially with respect to issues of phones or where people can't hear, because that has allowed MDC to check what needs to happen for repairs or to switch people to different lines when we're aware of it.

Deirdre mentioned something about a dress issue. I'm not aware of exactly what happened there, but I do know the parties have been in discussion about making sure that when defense counsel comes to visit clients, that they are allowed to see a client, to access computers, and try and be as consistent possible.

So there has been a little bit of a learning curve

on the part of my mutual counsel and me, but I think that we're in a good place overall to continue discussions, and importantly, hopefully to continue to work towards a final resolution of this case.

We mentioned in our status report that we did receive comments on our proposed settlement agreement, and we're in discussions with BOP and is MDC legal to respond as quickly as possible to those.

THE COURT: The one thing I would suggest, counsel, is that you and your co-counsel make sure you've gathered all of the information from prior defendant's counsel and also the prior reps from the BOP so that we don't have these issues.

I appreciate plaintiff's concern that it's like taking two steps backwards every time you take a step forward. We have to memorialize the agreements as we go along. So when the BOP agrees to make certain changes, they need to be put in writing, and this Legal Access Guide is one way to make sure we're memorializing everything that the institution has agreed to so that we can keep moving forward and not feel like plaintiffs do right now, that we step back, because now certain procedures that have been in place are being changed and now have to be re-looked at.

I appreciate that the institution as a whole has to constantly evaluate security measures. But a lot of

these changes were fought through, they were considered with the assistance of the institution, and so no one wants to revisit certain things if we can avoid doing so.

So I encourage you to work with your colleagues at the BOP and get in this Legal Access Guide. It seems to me like that will address a lot of the issues.

So, for example, the issue of appropriate clothing when attorneys show up at the MDC, or even the procedure for what should have if an attorney wants to reach out to legal at MDC, all of those things should be readily available not just to the attorneys who are visiting, but also the staff at MDC.

And the I one thing that I noticed in the report that we haven't really discussed is the continued issue of the shortage of staff. A lot of these problems are generated because of that.

What, if anything, is BOP doing to try to resolve that issue?

MS. OLDS: Thank you, Your Honor.

This is Dara Olds.

I've understood Your Honor's concerns with respect to Legal Access Guide. We understand that and will discuss that internally and try to make sure that things are memorialized.

With respect to Your Honor's question about

staffing, MDC did, very recently, within the past week or two, gain additional staff members. They're trying those staff members in the hopes that that will resolve some of the issues. There is still some understaffing, and so we are in the process of trying to increase that.

But as an update, they do have some additional staff, both I believe new permanent staff, as well as some staff that have come to assist from other institutions because MDC is still in need of staff right now.

THE COURT: Thank you.

Is there anything else we need to discuss today?

MR. HECKER: Not for plaintiffs, Your Honor.

MS. OLDS: No, thank you. Not from defendants, Your Honor.

THE COURT: I'm going to schedule the next meeting for October 20th at 10 a.m. The parties should submit a report the Wednesday before.

We're adjourned for today. Thank you.

(Matter adjourned.)

* * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ Kristi Cruz

KRISTI CRUZ